### Hill v. Hill.

*Divorce—Alimony—Allowance of one-third of husband's income—Spend-thrift trust.*

1. Alimony cannot be allowed out of the income of a spendthrift trust payable to the husband.

2. Where a husband's income, aside from his interest in such trust, was shown to be $1741.25, the court allowed as alimony one-third thereof, or $580.42.

Divorce *a mensa et thoro*. Petition to reduce alimony. C. P. Bradford Co., May T., 1912, No. 316.

*D. J. Fanning* and *John C. Gilpin*, for libellant.

*Lilley & Wilson*, for respondent.

POTTER, P. J., 17th judicial district, specially presiding, Sept. 1, 1924.—The proceedings had in the above styled case resulted in a divorce *a mensa et thoro* being granted to the libellant, which, so far as concerns the matters now in controversy, is mainly a matter of history.

On Feb. 16, 1915, the court decreed that the respondent pay to the libellant the yearly sum of $2000 as alimony, to be paid in equal monthly payments of $166.66⅔ each. So far as we know, these payments were promptly made from that time up to the present.

Hill *v.* Hill.

On June 9, 1924, the libellant presented her petition, asking for an increase of alimony, upon which a rule was granted. Other litigation was pending between these two parties, which was set for hearing on June 18, 1924, and the writer was called upon to preside. This litigation was happily settled on that date, and on June 19, 1924, the rule for increase of alimony was taken up. On that day, upon the beginning of the hearing on this rule, the respondent filed an answer, embracing in it a petition for the reduction of the said amount of alimony. At the outset of the hearing, the petition for the increase of alimony was withdrawn and the rule was abandoned. The proceedings for the reduction of the alimony were then taken up, and these are what we have before us for disposition.

It is recognized as the law of the land, so enacted by statute, that the alimony awarded to the wife shall not "exceed the third part of his annual profit or income of his estate, or of his occupation and labor," and, in our disposition of the petition, we are bound by this legislative enactment.

George R. Hill, the respondent, is a son of General Jonathan A. Hill, who died Oct. 24, 1905, leaving to survive him his wife, Lucy M. Hill, the mother of the respondent, and five children, of whom George R. Hill is one. By his will he gave the bulk of his estate to George R. Hill and to Hon. William W. Clark, as trustees, to pay the entire income thereof to his widow, Lucy M. Hill, during her life, and after her death, to use the income, and, if necessary, the principal, for the liberal education of such of his grandchildren as, in the opinion of his said trustees, may prove worthy of it; giving his grandsons a collegiate education and his granddaughters a liberal education in the best seminaries in the land. He further provided that any of the income not expended as hereinbefore mentioned be paid over annually to his said five children in equal portions, and at the death of any of them, the share of the parent to pass to his or her children, share and share alike.

Lucy M. Hill, the mother of the respondent, died Jan. 7, 1914, leaving her will, wherein, *inter alia*, she provides "that no portion whatsoever of my property, ever, under any circumstance, directly or indirectly, shall go to her (Mabel Snow Hill), either in satisfaction of any decree or order for alimony or support against George R. Hill in his lifetime, or as his widow or otherwise, for I consider she has voluntarily forfeited every consideration and recognition whatsoever by me or out of my estate." She appoints William P. Wilson and William Little, of Towanda, Penna., as trustees, creates a spendthrift trust for the benefit of George R. Hill, and places in their hands for that purpose certain property enumerated in her will.

It is clearly to be seen that no funds derived from the estate of Lucy M. Hill can be used with which to pay alimony to Mabel Snow Hill, so we must eliminate that source of income, if any, from any further consideration in these proceedings.

We then come to the consideration of the income of George R. Hill from the estate of his father, as well as any earnings he may have.

We are informed that the income of George R. Hill from this source is annually about $5521.25. We are also informed that he owes his father's estate the sum of $3300 for money borrowed, and for which he gave his note; that this amount was originally $4400, $1100 of which belonged to D. H. Douglas, a grandson, for which he gave to said Douglas a note.

It seems that a few years ago these trustees of the General Hill estate loaned to J. A. Hill the sum of $15,000, with which to go into business, he giving his note for the same, which was signed by J. A. Hill, George R. Hill,

Hill *v.* Hill.

Mabel Snow Hill and the other children of George R. Hill, J. A. Hill being one of them. It seems the business venture of J. A. Hill went up in flames and smoke, leaving him with nothing in the way of worldly possessions. He cannot pay back to the said trustees the principal or any part of the interest. His signature to this note is worthless. Mabel Snow Hill has no worldly possessions, and neither have any of the others who signed the note, nor any income above what is requisite for a livelihood, so that the burden and responsibility of the payment of either the principal or interest of this loan falls upon George R. Hill. The other heirs of General Hill have a legal right to expect their share of the $900 yearly interest due on this note, and they can legally require these two trustees to collect it from any of the makers or sureties on the note.

The share of the income of the General Hill estate due to George R. Hill comes from the trustees of General Hill, who divide this yearly income amongst those thereunto entitled. At the same time George R. Hill is liable to the estate of his father for the yearly interest on the sum of $3300 on his own account, on the sum of $1100 due D. H. Douglas, and on the sum of $15,000, loaned by the trustees to J. A. Hill. There is no other person from whom these three items of interest can be collected, and the trustees of the General Hill estate withhold from George R. Hill the yearly interest on these three sums before paying over to him his share of the income from the estate of his deceased father. The other heirs can require the trustees to do so, and, having the interest on these three sums in their hands, should they permit it to slip away from them, we think the other heirs of General Hill could compel the said trustees to make good to them each of their respective shares of it.

Therefore, George R. Hill does not get these sums into his hands; they are paid into the estate for the other heirs, and must be deducted from his share as follows:

| | | |
|---|---|---:|
| Yearly distributive share of Geo. R. Hill | | $5521.25 |
| Interest on $3300 owed by Geo. R. Hill | $165.00 | |
| Interest on $1100 due Douglas by G. R. H. | 55.00 | |
| Interest on $15,000 owing by J. A. Hill | 900.00 | |
| | | 1120.00 |

| | |
|---|---:|
| Balance due George R. Hill | $4401.25 |

By the terms of the will of General Hill, the amounts expended by the said trustees for the education of his grandchildren was to be deducted from the share of the income due each of his children, or, in other words, the amounts paid for the education of the children of George R. Hill are to be deducted from his share of the income from his father's estate, and we are acting on the belief that the sum of $5521.25 is his share of the income for the present year, and that the sums as hereinafter set out are the sums paid for the education of his children for the present year, viz.:

| | | |
|---|---|---:|
| Balance due Geo. R. Hill from last computation | | $4401.25 |
| Paid for education for Geo. S. Hill | $600.00 | |
| Paid for education for Marjorie Hill | 1300.00 | |
| Paid for education for R. Richard Hill | 1000.00 | |
| | | 2900.00 |

| | |
|---|---:|
| Balance due George R. Hill | $1501.25 |

Under the terms of the settlement of June 18, 1924, early hereinbefore mentioned, of the litigation then in progress between the parties hereto, George R.

Hill *v.* Hill.

Hill is to pay the sum of $4800 to Mabel Snow Hill, the said payment to be extended over a period of five years, at the sum of $960 per year. This payment was ordered and directed by the court by decree made and entered upon the terms of settlement effected. This sum must also be deducted from the share of George R. Hill in arriving at his net yearly income on which to base a decree for alimony. From which we have the following:

Balance due George R. Hill from last computation........ $1501.25
Amount due Mabel Snow Hill as per settlement, per year..   960.00

Net balance due George R. Hill.....................   $541.25

Some years ago, just when is not material herein, George R. Hill, with others, formed a corporation named The Hillscroft Corporation, which was formed for the promotion of farming, dairying, poultry raising, stock raising and like interests. That he owned 198 share of the stock of this corporation, for the payment of which he gave his note. Not being able to pay the note, the stock was forfeited and is owned by the trustees of the Lucy M. Hill estate. From the evidence produced before us, we find that the property of this corporation came from the estate of Lucy M. Hill, and is nearly or about all held by her said trustees.

It was sought at the hearing to bring proof to bear tending to prove that The Hillscroft Corporation was formed fraudulently with the design of defeating the recovey of alimony by this wife from her husband, and that George R. Hill was practically The Hillscroft Corporation. We were very liberal in permitting counsel to go into the matters of this corporation, with a desire to have brought to light any fraudulent transactions as above mentioned. We have gone over this testimony with great care, from which we must find that The Hillscroft Corporation and George R. Hill are two separate legal creatures. He is the president of the corporation, but as such receives no compensation. He is also the manager. Among other property owned by it is a yacht, of which, with the other property, he has charge. As manager of the property of this corporation, including the yacht, he received the yearly salary of $1200.

Therefore, in order to arrive at his yearly income, we must add this sum to the balance last found to be due to him, as follows:

Balance due George R. Hill by last computation.......... $541.25
Salary as manager of The Hillscroft Corporation......... 1200.00

Annual income of George R. Hill.................... $1741.25

This sum of $1741.25 is all the income annually coming to George R. Hill from any and all sources that we have been able to discover, as is shown by the evidence in the case presented to us, the legal one-third of which is due to Mabel Snow Hill yearly as alimony amounts to the sum of $580.42.

We have gone over the testimony presented with much care, in an endeavor to find more available funds upon which to base the calculation of alimony for the libellant, but as a disinterested party to the proceedings, and as a stranger to the parties concerned, we have been unable to do so. We would very willingly do so if we could. We are making up our judgment from the records and from the testimony before us, and from nothing else, with a desire to apply the law to the contention of these parties in a legal manner. In the administration of the law we are not to allow pity or sentiment to outweigh our legal judgment, although at times it is hard not to do so. Our judicial duty must be done bravely and fearlessly, with only the end in view of meting

Hill *v.* Hill.

out justice as the evidence and the merits of the case warrant. That is what we have endeavored to do in this case, and this is our judgment, whether it pleases or displeases.

And now, to wit, Sept. 1, 1924, upon mature reflection and consideration of all the files and the evidence submitted in this case, it is adjudged, ordered and decreed that the yearly alimony of Mabel Snow Hill, the libellant, be reduced to the sum of $580.42, the same to be paid to her in monthly payments of $48.37 each, on the first day of each month, in advance, the first payment to be dated from Sept. 1, 1924.