## Prifer's Estate

*Martin F. Duffy*, for accountants.

GANGLOFF, P. J., January 15, 1945.—Elizabeth T. Prifer (hereinafter referred to as decedent) died on May 28, 1943, testate. Only two of the three executors named in her will qualified as such and their first account now before the court for adjudication shows balances of both personalty and real estate. . . .

In her will decedent, after providing for payment of debts and funeral expenses, gives $100 to the Pastor of St. John's Roman Catholic Church, of Pottsville, Pa., for masses; $300 to The Schuylkill Trust Company, of Pottsville, Pa., for upkeep perpetually of her cemetery lot; her furniture and house furnishings to her son William H. Prifer; and the balance of her estate, real and personal—her residuary estate—is given to William H. Prifer (who has declined to act), Mrs. Edna Holmes Parton, and The Schuylkill Trust Company, in trust for her son William H. Prifer "for the support of himself and his children", with remainder over upon the death of her son to the persons in the will named.

We are not here concerned with this disposition over. The trust is undoubtedly a legal one with certain discretionary powers given the trustees but all that concerns us here, so far as the duties and powers of the trustees may be concerned, is to note that the life tenant is to be paid $200 each month beginning one month after date of decedent's death and that principal is to be expended if and when income proves insufficient for the purpose. The account shows that the life tenant has been paid monthly the amount designated in the will and that the income has not been sufficient to meet these payments.

The executors are instructed to erect a suitable marker upon decedent's grave. This has not been done and the executors have requested that $125 be impounded in their hands for this purpose.

There are no claims of creditors.

Decedent was lessee of a safe deposit box in a local bank. The bank records show that she had sole access to this box. Upon her death the executors found in this box, among other things, the following United States Treasury Defense Bonds, namely: a $1,000 series D bond registered in the name of "Mrs. Elizabeth T. Prifer, P. O. D. Mrs. Catherine Tritschler Rhody" and a $100 series E bond registered in the name of "Mrs. Elizabeth T. Prifer or Mrs. Catherine Tritschler Rhody"; a $100 series E bond registered in the name of "Mrs. Elizabeth T. Prifer or Mrs. Frances T. Hay" and a $1,000 series D bond registered in the name of "Mrs. Elizabeth T. Prifer, P. O. D. Frances Tritschler Hay"; five $1,000 and three $100 series D bonds registered respectively in the name of "Mrs. Elizabeth T. Prifer, P. O. D. Mrs. Edna Holmes Parton"; a $1,000 and a $500 series D bond each registered in the name of "Mrs. Elizabeth T. Prifer, P. O. D. Mr. Andrew Prifer"; and a $1,000 series G bond registered in the names of "Mrs. Elizabeth T. Prifer or William H. Prifer". As is well known, the letters P. O. D. stand

for "payable on death to". These bonds are not included in the inventory and appraisement of decedent's estate; however, the bonds remain in the possession of the executors for such disposition as the court may direct. These bonds were in the sole possession of decedent at the time of her death and are now in the possession of the executors of her estate, therefore, the orphans' court has jurisdiction to determine what is to be done with the bonds: Crisswell's Estate, 334 Pa. 266; Brown's Estate, 343 Pa. 230.

As to the bonds standing in the name of decedent "or" the respective other individuals above named, there can be no doubt that if a gift of any of these bonds was intended to take effect in the lifetime of decedent the gift was not complete because there was no delivery, either actual or constructive: Allshouse's Estate, 304 Pa. 481; Scanlon's Estate, 313 Pa. 424; Watkins, Exec., v. MacPherson, 348 Pa. 467. True, there is a joint ownership indicated upon the face of each of these bonds but the mere fact that a joint ownership of property is so created does not, as a matter of law, give the survivor the entire ownership of the property: Walsh's Appeal, 122 Pa. 177; Mardis, Admx., v. Steen, 293 Pa. 13; Scanlon's Estate, supra; Zellner's Estate, 316 Pa. 202. It is essential that there be a further expression of intention on the part of the donor: Leach's Estate, 282 Pa. 545; Mardis, Admx., v. Steen, supra; Scanlon's Estate, supra; Mader et al. v. Stemler et al., 319 Pa. 374; Stevenson's Estate, 33 D. & C. 18. That this required a further expression of intention than is clearly present here there can be no doubt. All of these bonds were purchased by decedent under and subject to the regulations of the United States Treasury. It may properly be assumed that decedent was advised as to the different ways in which Defense Bonds could be registered as to ownership and the legal effect of each way. As to the bonds registered in the name of decedent "or" the respective other

individuals named, the Treasury regulations specifically provide that "either co-owner may redeem the bond without signature of the other, including the survivor in case of the death of the one co-owner . . . A bond will be reissued on the death of one co-owner in the name of the other with or without a beneficiary". Thus there was an express agreement by the United States Treasury on the one hand and decedent on the other that these bonds purchased by her and registered in the joint names of herself "or" another were to become the absolute property of the other person upon her death. Indeed, the United States Treasury will pay the redemption value to the survivor only. Here then, we repeat, is the required further expression of intention referred to above. Therefore, the bonds registered in the name of decedent or Mrs. Catherine T. Rhody, or Frances T. Hay or William H. Prifer, respectively, are now the property of these survivors.

As to the bonds registered in the name of decedent payable on her death to the individuals above named, we have language that in substance is parallel to Brown's Estate, supra. In the latter case decedent had in her possession at her death certain investment share certificates standing in her name payable in case of death to Robert Brown and Albert Brown. We have the same situation here. In Brown's Estate the court said (p. 238):

"In our opinion, the directions 'in case of death to Robert Brown and Albert Brown', like the writings involved in Grady v. Sheehan, 256 Pa. 377, and Waltman v. Germantown Trust Co., 92 Pa. Superior Court, 480, are purely testamentary in character, as the decedent's stated purpose at the time the certificates were so endorsed, her subsequent retention of the certificates, and her exercise of control and dominion over the funds up until her death, clearly indicate they were intended to be. . . . As testamentary dispositions, the

endorsements are concededly ineffectual, because not in compliance with our statute of wills".

This disposition of the case seems to have been clear enough but appellants (there was a reversal) again proceeded in the lower court only to lose again in the appellate court—see Brown's Estate, 347 Pa. 244. In the latter case the court said (p. 245):

"We are still of opinion, and again decide, that this testamentary disposition is ineffectual because it is not signed at the end thereof, as required by Section 2 of the Wills Act of 1917, supra".

That the purchase of these bonds payable on death to another created a debtor-creditor relationship, there can be no doubt. Were we to conclude that the rule in Brown's Estate is the law of the case here we would have to say that the bonds presently under discussion do not pass to the persons named in each bond as entitled thereto upon the death of decedent. Our next step then would be to instruct the executors to hold and dispose of these bonds as part of decedent's estate passing under her will. But manifestly this would be confusion worse confounded because the executors then could neither convert the bonds into cash nor transfer them to anyone else. In Brown's Estate there was also a debtor-creditor relationship and the debtor corporation actually transferred the investment certificates to Robert Brown and Albert Brown as the persons entitled to receive and hold them. This transfer, in view of the decision of the appellate court, raised an issue between decedent's estate and the corporation, or, in other words, this transaction cast upon the personal representative of the decedent's estate a duty to make a claim against the corporation and of course such claim could not be prosecuted in the orphans' court.

But the Government of the United States was not involved in Brown's Estate. In the instant case our Federal Government is a party to the transaction. As a superior authority it has seen fit to issue its bonds in

the manner hereinbefore mentioned. The Treasury Department, speaking and acting for the Federal Government, sold these bonds to decedent under express agreement that upon her death as the purchaser the bonds would become the property of the persons named in the bonds. Whenever the constitutional powers of the Federal Government and those of the State come into conflict, the latter must yield: Florida v. Mellon, Secretary of Treasury, et al., 273 U. S. 12; Oklahoma ex rel. Phillips v. Guy F. Atkinson Co. et al., 313 U. S. 508. The rule that the decision of a State court determining the ownership of property in certain cases is controlling: Freuler, Admr., v. Helvering, Commissioner of Internal Revenue, 291 U. S. 35; Sharp et al., Execs., v. Helvering, Commissioner of Internal Revenue, 303 U. S. 624; manifestly would not apply here, were it determined that any of these Defense Bonds are still the property of decedent's estate, for the very apparent and compelling reason that a superior authority, namely, the Government of the United States, has already fixed that ownership in the survivors. Brown's Estate, supra, therefore is not controlling and not applicable here; in fact, we have no doubt that the rule there stated was not intended to cover a situation such as exists here. We conclude, therefore, that the bonds issued to decedent payable on her death to the other persons named became the sole property of the latter when decedent died. To decide otherwise would indeed cause repercussions on the part of the public generally that would be difficult to imagine.

The next question is one of taxation. In addition to the Defense Bonds hereinbefore mentioned decedent had three life insurance policies. Part of the proceeds of one policy was payable to her estate and this part is included in the account. The balance of the proceeds, namely, $15,000, together with the proceeds of the other two policies aggregating $30,189.17, was payable to named beneficiaries. The proceeds so payable

to third persons do not pass through the hands of the executors. The executors paid $6,946.76 in the form of Federal estate tax. They properly included this expenditure in their account: Mellon Estate, 347 Pa. 520. The amount so paid includes the tax on the estate covered by the account and decedent's real estate valued at $19,000 as well as the taxes on all the life insurance proceeds and the Defense Bonds hereinbefore mentioned.

Concededly, both the life insurance proceeds and the redemption value of the Defense Bonds must be included as part of decedent's gross estate for Federal estate tax purposes: see section 811 of the Internal Revenue Code. As to the bonds particularly, Mim. 5202, Commissioner of Internal Revenue, June 14, 1941 (which has the force and effect of law insofar as not inconsistent with express statutory provisions: Boske v. Comingore, 177 U. S. 459; Maryland Casualty Co. v. United States, 251 U. S. 342; Manhattan General Equipment Co. v. Commissioner, 297 U. S. 129), clearly points out that in the case of bonds held jointly by decedent or another the bonds, on death of decedent before redemption, became part of her gross estate at their full redemption value for Federal estate tax purposes; and in the case of bonds payable on death of decedent to another individual the commissioner holds that decedent only could redeem these in her lifetime but upon her death without such redemption the redemption value of the bonds must be included in her gross estate for Federal estate tax purposes.

This brings us to the question whether or not the beneficiaries of the insurance policies and the present owners of the Defense Bonds are required to refund to the executors a proportionate part of the Federal estate tax already paid by these executors upon the property passing to them by reason of the death of decedent.

It would unduly and unnecessarily prolong this discussion to quote here in detail the applicable provisions

of section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of July 2, 1937, P. L. 2762. It is sufficient to say that under the provisions of that act this court is required to make a proration of the Federal estate tax among the persons interested in an estate "in proportion as near as may be that the value of the property, interest or benefit of each such person bears to the total value of the property, interests or benefits received by all such persons interested in the estate", and the act defines "persons interested in the estate" as "all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust estate, interest, right, power or relinquishment of power, taxable under any of the aforementioned laws, providing for the levy or assessment of estate taxes."

As already mentioned, both the life insurance proceeds and the Defense Bonds are required to be included in decedent's gross estate for Federal estate tax purposes and certainly both fall within the provisions of the Act of 1937. This act is constitutional: Riggs v. Del Drago, 317 U. S. 95 (a case arising in New York in which a statute of that State almost identical with our Act of 1937 is construed as to constitutionality); Harvey's Estate, 47 D. & C. 12. The proration of Federal estate taxes in the manner prescribed in the Act of 1937 is mandatory "except in a case where a testator otherwise directs in his will".

The question then is, does decedent in her will relieve the beneficiaries of the life insurance contracts and the present owners of the Defense Bonds from liability for a proportionate part of the Federal tax paid out of her estate by her executors? Even though one may be inclined to distinguish between life insurance proceeds and the Defense Bonds by pointing out that the execu-

tors may under Federal statutory authority collect an appropriate proportionate part of such taxes from the beneficiaries of life insurance contracts (see section 826(c), I. R. C., and the comment thereon at pages 101 and 102 of Riggs v. Del Drago, supra) there still would be applicable the question just posed.

We quote in full the provision of the will upon the question of taxation:

"Seventh: I direct that any estate, transfer, inheritance or succession tax or taxes which may be due and payable shall be paid out of the residuary of my estate and that the legatee named shall receive his legacy free and clear of such tax or taxes."

Two directions appear in the above paragraph. The first is a direction that any of the taxes named "which may be due and payable" are to be paid out of her residuary estate. The second is a direction that "the legatee named" is to receive his legacy free of "such tax or taxes". In attempting to ascertain the purpose and intent of decedent as stated by her in the above quoted paragraph it should be helpful to keep in mind the distinction between the estate tax and the transfer inheritance tax. Certainly "estate" tax as used in the will includes, if it does not mean solely, Federal estate tax. The Federal estate tax is payable out of decedent's estate as a whole and the applicable State law as to the devolution of property at death governs the distribution of the remainder and the ultimate impact of the Federal estate tax: Riggs v. Del Drago, supra. The latter tax is, in effect, an expense of administration, whereas the transfer inheritance tax is a tax upon the interest passing to the beneficiary by reason of the owner's death: Ely's Estate, 28 D. & C. 663, and the cases there cited. Decedent is presumed to have known this distinction between estate and transfer inheritance taxes and also that the ultimate impact of the Federal estate tax is governed by the Act of July 2, 1937, P. L. 2762, hereinbefore referred to: Jeffery's Estate, 333

Pa. 15. With these presumptions and their attendant implications as a starting point, the language used by decedent upon the question of taxes should lend itself to less doubt than otherwise would be the case. So, when decedent directs that any estate tax "which may be due and payable" is to be paid out of her residuary estate, there must be included in the directive the estate tax paid upon the life insurance proceeds and the Defense Bonds, for these proceeds and bonds are part of the gross estate upon which this tax is assessed and is "due and payable".

Of course it might be contended that the second directive warrants an inference that decedent had in mind only the estate passing under her will and that the life insurance proceeds and the Defense Bonds were not in her thoughts at all. We may not speculate upon what decedent may have meant; on the contrary we must limit our analysis to the words used and the known surrounding circumstances. Decedent is presumed to have known, as already said, that the State transfer inheritance tax is payable by the legatee whereas the Federal estate tax is a charge against her estate as a whole. So when she talks about taxes "which may be due and payable" she no doubt means taxes due and payable by her estate. Now, the transfer inheritance tax is not due and payable by her estate as such but by the legatee named in the will and to make certain that the legatee would also be relieved from payment of the transfer inheritance tax she included the second directive. True, this last clause refers to one legatee only, presumably her son, who takes the household furnishings, but this seems natural for the reason that the bequest for cemetery upkeep is not subject to transfer inheritance tax and she no doubt did not consider the direction given the executors to expend $100 for masses as a legacy. To say that the second directive is merely explanatory of the first and that therefore the meaning of the entire paragraph must be held within

the narrow field fixed by the second directive is a viewpoint that we do not believe is warranted under all the circumstances and presumptions. The record shows that at least one of the insurance policies was an annuity contract in which decedent's four grandchildren (actually step-grandchildren) are the beneficiaries. These beneficiaries receive the income until each attains the age of 25 years, when a proportionate part of the principal is paid. The income would be far from sufficient, even for several years, to pay the proportionate part of the Federal estate tax. Here again the viewpoint adopted above, namely, that decedent intended in her tax clause to have the entire Federal estate tax paid out of her residuary estate, seems in keeping with the intent of the decedent as expressed in the terms of the annuity contract.

For reasons stated, we conclude that the Federal estate tax is to be paid out of decedent's residuary estate.

Thus far we have not discussed specifically the State transfer inheritance tax. The beneficiaries of the annuity contract are subject to this tax: Bayer's Estate, 345 Pa. 308. The other two policies were not annuity contracts and therefore the proceeds are not subject to the transfer inheritance tax (see Inheritance Tax Act of June 20, 1919, P. L. 521, and its amendments). The beneficiaries of the Defense Bonds are subject to the transfer inheritance tax; they have been so informed and we understand they are willing to pay the tax upon their respective bonds. The Commonwealth makes no claim against the executors for transfer inheritance tax either upon the annuity contract or the Defense Bonds. Neither the insurance proceeds nor the bonds pass through the hands of the executors and therefore the Commonwealth must look to the beneficiaries for the tax: Cochrane's Estate, 342 Pa. 108. The fact that the bonds pass physically through the hands of the executors is of no moment here because the executors could not protect themselves, were they to pay the

tax in the first instance, in the event a beneficiary refused to reimburse the executors. There remains then but one question, does the tax clause in the will require the executors to pay the transfer inheritance tax upon the annuity insurance proceeds and the Defense Bonds? The answer already has been indicated when we pointed out the distinction between estate tax and inheritance tax. The latter is a charge against the legatee or beneficiary. The only transfer inheritance tax to be paid by the executors for legatees or other beneficiaries is the tax due upon the transfer of the household furnishings to the son and the transfer of the residuary estate in trust. That has been paid as well; in fact the tax upon the entire net estate actually passing under the will has been paid to the Commonwealth. We find, therefore, that the transfer inheritance tax upon the insurance annuity proceeds and the Defense Bonds is not payable out of decedent's residuary estate.