## Evans' Estate

*Wilhelm E. Shissler*, for estate.
*George W. Keitel*, for Commonwealth.

RICHARDS, P. J., December 18, 1945.—This is an appeal by the executor of the above decedent from the appraisement for inheritance tax purposes of certain United States savings bonds registered in the name of "Henry S. Evans or Miss Georgina Evans Bevan" as coöwners, and found in the safety deposit box of decedent at the time of his death. The facts in the case were submitted by a stipulation and the case

presented to the court on said stipulation and the appeal petition.

Decedent, Henry S. Evans, died testate on February 25, 1945. Spencer G. Nauman, Esq., was duly granted letters testamentary. He caused to be prepared and filed an inventory and appraisement of the estate. Attached thereto as a rider, but not technically a part thereof, was a list of 10 United States savings bonds, series E, issued to "Henry E. Evans or Miss Georgina Evans Bevan". Miss Bevan is a niece of decedent. These bonds were numbered: M5001352E; M5001353E; M5001354E; M5001356E; M5001357E; M5932509E; M5932510E; M5934841E; M5934842E and M5934843E. Each was of $1,000 denomination at the date of maturity. They were appraised as part of the estate of decedent for State transfer inheritance tax purposes, at $7,550, and subject to a tax at the rate of 10 per cent. It was from this appraisement that the appeal was taken.

The first seven paragraphs of decedent's will make certain pecuniary bequests. The eighth paragraph gives the entire residue of the estate to Georgina Messersmith Evans Bevan, who is a sister of decedent and the mother of Georgina Evans Bevan, one of the designated coöwners of the bonds in question. The ninth paragraph provides:

"I direct that all inheritance and estate taxes, State and Federal, assessable against my estate, or against the various persons sharing therein, shall be paid out of the residue of my estate".

No paragraph of the will mentions any bonds of any kind.

The stipulation of facts shows the following:

The bonds were purchased and paid for by decedent, Henry S. Evans, out of his own funds. He retained possession of them until his death. At that time the bonds were in a safe deposit box leased to him as sole

lessee. Miss Bevan did not have access to said safe deposit box. Decedent had informed Miss Bevan that he had designated her as coöwner of the bonds. Miss Bevan survived decedent.

The stipulation further sets forth the act under which said bonds were issued, and the applicable regulations of the Treasury Department relating thereto.

Appellant contends that not more than one half of the value of said bonds is subject to the transfer inheritance tax. The Commonwealth contends that the full value of said bonds is taxable.

The tax problem here involved is inextricably interwoven with the question of ownership. In determining questions of ownership there are some irreconcilable conflicts between the laws of this Commonwealth and the laws of the Federal Government. We will first consider the circumstances under which said bonds were issued, sold and registered. While technically a bond may evidence the loan of money, the general public, in acquiring such bonds, speaks of "buying" bonds, and the promoters refer to the transaction as a "sale" of bonds. We will use these terms in their popular sense.

The stipulation of facts sets forth "that the said bonds were issued under, and their transfer and *ownership* controlled by section 22, of the Second Liberty Bond Act, as amended by the Act of February 4, 1935, 49 Stat. at L. 21, as amended by the Public Debt Act of February 19, 1941, 55 Stat. at L. 7, 31 U. S. C. A., §757c." This act, among other things, provides that said bonds "shall be issued in such manner and subject to such terms and conditions . . . including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe". A copy of the regulations promulgated by the Secretary of theTreasury, and in effect at the time the bonds here involved were bought, is attached

to the stipulation of facts. These regulations contain a number of provisions of interest in this case, and of interest to all bondholders. They provide that series E bonds may be registered in three and only three ways: (1) In the name of one person; (2) In the names of two, but not more than two persons, as coöwners, as to A or B. In this type the word "and" may not be substituted for "or"; (3) In the name of one person, payable on death to a designated beneficiary. Type two is usually referred to as "co-owner bonds" and type three as "beneficiary bonds".

Bonds registered in the name of one person may be redeemed before maturity by said person and are payable to said person at maturity. Such bonds may be reissued to add the name of a coöwner or to add the name of a beneficiary. In the event of redemption, payment or reissue, the bond must be surrendered.

As to coöwnership bonds, the regulations provide that during the lives of both coöwners the bond will be paid to either coöwner upon his separate request without requiring the signature of the other coöwner; and upon payment to either coöwner the other person shall cease to have any interest in the bond. The bond will also be paid to both coöwners upon their joint request. The bonds must be surrendered in order to procure payment thereof. The bond will not be reissued in any form during the lives of both coöwners, except in certain instances such as mistake or change of name. If either coöwner dies without having presented and surrendered the bond for payment, the surviving coöwner will be recognized as the sole and absolute owner of the bond, and payment will be made only to him.

A bond in the beneficiary form will be paid to the registered owner during his lifetime upon his request. It will not be reissued during beneficiary's lifetime to eliminate beneficiary's name, but may be reissued

to designate him a coöwner. Should beneficiary die before owner, the bond may be reissued generally. If the registered owner dies without the bond having been paid or reissued, and is survived by the beneficiary, the beneficiary will be recognized as the sole and absolute owner of the bond, and it will be paid only to him.

In our opinion, the regulations of the Treasury Department relating to the issuance of said bonds and to the rights, powers, privileges and incidents of ownership are part of the contract of purchase. They may not be varied by the individuals involved, nor by State laws inconsistent therewith. The broad Federal powers to finance the United States Government, especially in times of war, superseded any State laws, decisions or regulations in conflict therewith.

Article 1, sec. 8, cl. 2, of the Constitution of the United States confers upon Congress the right to borrow money on the credit of the United States, while clause 18, of the same section, authorizes Congress to make all laws which shall be necessary and proper, inter alia, to carry that power into effect. The several acts of Congress above referred to clearly come within this constitutional provision. Consequently, the regulations promulgated by the Secretary of the Treasury, being within the authority conferred upon him by Congress, have the effect of law. See United States v. Birdsall, 233 U. S. 223, United States v. Sacks, 257 U. S. 37, United States v. Janowitz, 257 U. S. 42. This brings the whole situation within Article 6, clause 2, of the Constitution, where it is provided that

"This Constitution, and the laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding".

Any State laws relating to wills, gifts inter vivos, gifts causa mortis, intestacy, tenancy in common or joint tenancy, and the like, are consequently not applicable in determining the rights of owners, coöwners or beneficiaries, being superseded by the supreme law of the land.

Disregarding the treasury regulations for a moment, we will observe that in our opinion, the coöwners of such bonds are not joint tenants and there is consequently no right of survivorship under our State law, except in the case of husband and wife. This is because no apt words are used to create a joint tenancy and because of the provisions of the Act of March 31, 1812, 5 Sm. L. 395, 20 PS §121.

It might be contended that under the State law, the coöwners are tenants in common, notwithstanding the use of the word "or" rather than "and". But such a conclusion is violently in conflict with the terms and conditions of the contract between the purchaser and the United States Government. As to these coöwnership bonds, either coöwner, during the lifetime of the other, could, if in possession of the bonds, cash them, thereby destroying the rights of the other. This right is not an incident of tenancy in common where each tenant usually has an undivided interest in the whole, but certainly is not the owner of the whole.

Neither do we think that there was a gift inter vivos, because the purchaser did not surrender dominion and control over the property. The one in possession of the bonds was in a position to control them. In this case, Miss Bevan at no time was in position to control the bonds and hence could not cash them.

Under the State law, also, the bonds would likely not be considered as a testamentary disposition either to a surviving coöwner or to a surviving beneficiary, since there was no execution of a testamentary docu-

ment, which is required to be signed at the end thereof. And furthermore, we do not think that a testamentary disposition of the bonds, inconsistent with the terms of the contract, could be made in any event.

These illustrations serve to show the difficulties of trying to apply the State law in determining ownership of the bonds, and the conflicts which arise between the State and Federal law. We recognize that there is a great difference of opinion upon the subject which will not be clarified until we have a final determination by the appellate courts. In our opinion, the surviving beneficiary or coöwner of such bonds becomes the absolute owner thereof at the exact moment of death of the owner or other coöwner, as the case may be. In this case, Miss Georgina Evans Bevan, as the surviving coöwner, became entitled to the bonds at the precise moment of Mr. Evans' death.

While it is our opinion that the Federal law is controlling in determining the rights of owners, coöwners and beneficiaries of such bonds, it is likewise our ~inion that the State laws relating to taxation are applicable to the resulting situation. The State tax here involved is known as the Pennsylvania transfer inheritance tax. It is not a tax on property but a tax on the transfer of property.

Bearing in mind the treasury regulations, supra, it seems to be clear that the purchaser of beneficiary bonds or coöwner bonds knew that unless such bonds were cashed during the lifetime of the owner or the lives of the coöwners, at the case may be, they would go to the surviving beneficiary or surviving coöwner, at the time when the owner or other coöwner died. Not having cashed them, Mr. Evans must be charged with an election to have the bonds become the property of Miss Bevan, upon his death, or to become his property upon her death. His intent is evidenced by his own conduct.

No contention has been made that a tax may not be imposed by this Commonwealth upon the transfer of the property from decedent to his niece, Miss Bevan. The only question is: Was a tax imposed and, if so, upon what?

The Transfer Inheritance Tax Act, as last amended by the Act of July 14, 1936, P. L. 44, §2, 72 PS §2301, provides as follows:

"Section 1(c). When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, *or* intended to take effect in possession or enjoyment at or after such death.

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor . . . it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause.

"Section 1(e). Whenever any property, real, or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, so that upon the death of one of them the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed a transfer, taxable under the provisions of this act, of a fractional portion of such property, to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant. Subject to the provisions of paragraph (c) of this section, the provisions of paragraph (e) shall apply regardless of when such joint estate was first created." (Italics supplied.)

Section 1(e) applies to joint tenancies of which survivorship is but one incident. Joint tenants are seized per my et per tout, of part and of the whole. There is possession and enjoyment on the part of all joint tenants from the moment of creation. As we have endeavored to show above, Mr. Evans and Miss Bevan were not joint tenants either under the laws of this Commonwealth or under the treasury regulations, notwithstanding the fact that there was a right of survivorship. This militates against the application of section 1(e) in this case.

Section 1(e) would seem to apply when a genuine joint tenancy under the laws of this State exists, and when there is a transfer from one joint tenant to another, by reason of the death of one and the survival of the other. This is the transfer which is taxed by section 1(e).

However, some situations may exist where even in a joint tenancy the tax would be imposed under section 1(c). For example: If A created a joint tenancy in A and B (B not being A's wife), if A made the transfer to A and B in contemplation of death, it would be taxable under section 1(c) and not under section 1(e). We do not see how A could create a joint tenancy in A and B to take effect in possession and enjoyment at A's death.

The expressions "made in contemplation of death" and "intended to take effect in possession or enjoyment at or after such death", used in section 1(c) are applicable to the one who makes the transfer, as it is upon his estate the tax is levied. The tax imposed in section 1(e) is upon the transfer by survivorship from one joint tenant to another joint tenant.

The last sentence of section 1(e) must mean that the provisions of 1(e) apply only when not in conflict with the provisions of section 1(c). Therefore, section

1(e) would not apply when the transfer involved was made in contemplation of death, under the conditions prescribed in section 1(c) *or* when it was to take effect in possession or enjoyment at death. The bonds here involved were bought more than one year prior to death, so we are not concerned with the provisions relating to transfers in contemplation of death. But since Mr. Evans retained possession and enjoyment of the bonds during his lifetime no interest passed to Miss Bevan until the death of Mr. Evans. In other words, the transfer to Miss Bevan was to take effect in possession and enjoyment at the death of Mr. Evans. It follows that the tax to be imposed in this case upon the transfer from Mr. Evans to Miss Bevan is controlled by section 1(c) and not by section 1(e). Therefore the tax is upon the full appraised value of the bonds and not upon a fractional or one half part thereof.

As a result of our conclusions, it follows that the appraisement appealed from is correct. In Cochrane's Estate, 342 Pa. 108, 112 (1941) our Pennsylvania Supreme Court had this to say about an inventory and appraisement for transfer inheritance tax purposes:

"Appellant also contends that the appraisal and assessment as made is void, because it assesses a single tax and that against the executor and includes a tax on the fund in the joint bank accounts which does not go through its hands. This is based upon the assumption that the appraiser appraised one half of the joint bank accounts as part of the estate of the decedent in the hands of the executor and that the assessment with respect to such accounts was made against it. The State appraiser is required to appraise in one assessment the various items constituting the taxable estate of the decedent, real estate, assets donated in contemplation of death, those comprising a gift to take effect at or after death, funds in joint bank accounts,

etc. The statute (Transfer Inheritance Tax Law of June 20, 1919, P. L. 521, 72 PS §2301 et seq.) contemplates only one appraisement of all the taxable assets of the decedent's estate. Who shall pay the tax depends upon who receives the property. The Commonwealth may be required to look to several sources in order to obtain the aggregate amount of the taxes. The only tax which is chargeable against the personal representative is that on the assets passing through its hands, which it is required to deduct from each distributive share. For the tax on the other assets of the estate, which do not pass through its hands, the Commonwealth must look to the individuals receiving the property".

We believe that by virtue of the Federal law and treasury regulations, the bonds here involved passed by contract to Miss Bevan upon the death of Mr. Evans and that at the moment of his death they were part of his estate. It follows that the provisions of his will relating to the payment of estate and inheritance taxes are applicable and that the tax must be paid from the residue of the estate.

We have read, with interest and profit, the opinions of Judge Bolger in the estate of John Joseph Haas, no. 120 for the year 1945, in the Orphans' Court of Philadelphia County, and of Judge Gangloff in Prifer's Estate, 53 D. & C. 103. Our conclusion can, in some respects, be harmonized with at least some of their conclusions, but not with all of them. We are more nearly in harmony with United States v. Dauphin Deposit Trust Co., 50 F. Supp. 73. There are many other cases, State and Federal, bearing upon the problem, but we have not referred to them. We will leave that to the industry of counsel in the event of an appeal.

Our conclusions are as follows:

1. The 10 bonds involved in this appeal upon the death of Henry S. Evans passed to his niece Georgina Evans Bevan and became her property.

2. The bonds became the property of Miss Bevan at the aforesaid date of death and not before.

3. A transfer inheritance tax is due upon the full appraised value of said bonds.

4. The inventory and appraisement made on behalf of the Commonwealth in the present case is correct.

5. The tax due on the transfer of the bonds is to be paid from the residue of the estate of decedent.

We realize that some of the things we have said in the course of this opinion may, strictly speaking, be dicta. However, we felt obliged to say them in order that all interested parties may have some guidance.

### Decree

And now, to wit, December 18, 1945, the appeal is dismissed at the cost of appellant, to be paid from decedent's estate. An exception is noted for the appellant and for the Commonwealth.