(No. 32614.—

ANNA OSTER, Appellee, *vs.* THEODORE OSTER *et al.,* Appellants.

*Opinion filed March 23, 1953.*

FRANK MOLAND, of Chicago, for appellants.

STANLEY WERDELL, and S. CHARLES BUBACZ, both of Chicago, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

The plaintiff, Anna Oster, brought an action in the superior court of Cook County against the defendants, Theodore Oster and Frances Oster, seeking to establish a constructive trust with respect to an improved parcel of real estate in the city of Chicago, for an accounting and for other relief. The master to whom the cause was referred found the issues for the plaintiff and recommended a decree accordingly. From the decree of the chancellor affirming the master's report and ordering the defendants to convey the real estate and deliver certain cash and bonds to the plaintiff, defendants prosecute to this court a direct appeal, a freehold being involved. Anna Oster is the mother of defendant, Theodore Oster. Frances Oster, the other defendant, is the wife of Theodore.

Peter Oster, Sr., during his lifetime, and the plaintiff, his wife, owned as joint tenants a valuable improved parcel of real estate located in the city of Chicago, consisting of a two-story flat building and a two-car garage. They also jointly owned and were possessed of $3850 in cash and $1100 in U.S. defense bonds, all of which were kept for safety behind a baseboard in the pantry of their home.

Peter Oster became deceased on August 22, 1948, leaving the plaintiff as his widow, and four children, Helen, Lillian, Peter Oster, Jr., and Theodore. There is competent

evidence showing that the mother, Anna Oster, cannot read or write English and that she speaks Polish most of the time. The defendant, Theodore, was the only son living in Chicago. During the lifetime of Peter Oster, Sr., the family were upon good terms. The father placed great trust and confidence in the defendants and frequently relied on their suggestions. The testimony indicates that the defendants possess more than average intelligence and have had considerable business experience of their own.

The evidence on the part of the plaintiff further shows that a short time after the death of the father, the defendants visited the mother, and asked and persuaded her, after repeated requests, to convey her real estate to them and deliver to them all the cash and the bonds here in controversy, representing to her that thereby the costs and expenses of probate would be avoided and that upon her death the defendants would divide her estate equally among her children.

Since the father's death Anna Oster and her daughter, Lillian, have continued to live in one apartment in the flat building, and another daughter, Helen Vinton, and her husband, occupy a second apartment. Conforming to the suggestion of defendants, on September 8, 1948, Lillian Oster, at the request of her mother, delivered $3850 in cash and defense bonds of the value of $1100 to the defendants, with the understanding that upon plaintiff's death they would divide the property evenly between the children. In furtherance of the same suggestion on the part of defendants, on January 8, 1949, Frances Oster employed an attorney to prepare a deed conveying the real estate to the defendants as joint tenants. In the presence of a neighbor the plaintiff signed the deed by mark and was informed by the attorney that she was signing the deed over to her son and wife so that after her death the son could sell the house and divide the proceeds between the children. No consideration was paid for the deed. In January, 1949, the plaintiff delivered

$400 and again in February, 1950, a like amount of $400 to Frances Oster for safekeeping. Up to this point the plaintiff had sustained friendly relations with the defendants.

Early in the year 1951, the plaintiff applied to the defendants for funds needed for repairs and other expenses. The defendants refused her requests for money and the son informed the plaintiff that the property was his now and that he was the boss and had everything to prove it. Other controversies continued to arise over the management and handling of the properties between the mother and the defendants because of the domination of the son and his wife. However, the plaintiff continued to manage the real estate, collect income, make repairs, pay taxes and exercise complete control over the flat building.

In the defendants' testimony, the son, Theodore, contradicts the portion of plaintiff's evidence with reference to the time of the delivery to him of the cash and bonds. He testified that the $3850 in cash and the $1100 worth of bonds were given him by the father several months prior to the latter's death. This statement does not ring quite true because it is admitted that the funeral expense for the father amounted to the sum of $1265.30 and that the defendants paid the same with $800 supplied by his sister, Lillian, and the balance by his mother. It would be strange if all the cash had been turned over to him by the father, many months prior to death, that he would not contribute some part or all of the funeral expense.

Later on in the year 1951, because of continual dissatisfaction over the dominant attitude of the son in the management of the property, the plaintiff many times asked the defendants to reconvey the real estate and to return the cash and the bonds, with which requests the defendants refused to comply.

A careful study of the entire testimony convinces one that the plaintiff did not understand she was losing title to and control of all the real and personal property she owned

at the time of her husband's decease. Her scant knowledge of the English language, her unfamiliarity with business affairs, her advanced years and poor health combined to make her depend upon and to place complete trust in her son.

The record shows clearly that a fiduciary and confidential relationship existed between the plaintiff and the defendants and that the plaintiff did not know or understand the legal effect of the execution and delivery of the deed, or the effect of turning over the cash and bonds to her son for safekeeping.

This court has often stated that a fiduciary or confidential relationship exists in all cases where one reposes trust and confidence in another who thereby gains a resulting influence and superiority over the first. *Kester* v. *Crilly,* 405 Ill. 425; *Stephenson* v. *Kulichek,* 410 Ill. 139.

It is our conclusion from the facts that a constructive trust arose out of the abuse of a confidential relationship which existed between the mother and the son. In *Stephenson* v. *Kulichek,* 410 Ill. 139, it is stated, "Where a confidential or a fiduciary relationship exists, the burden rests squarely upon the grantee or beneficiary of an instrument executed during the existence of such relationship to show the fairness of the transaction, that it was equitable and just, and that it did not proceed from undue influence. The mere existence of a confidential relationship prohibits the dominant party from seeking any selfish benefit during the course of the relationship and affords a basis for fastening a constructive trust upon property so acquired."

The defendants in this case have wholly failed to sustain the burden placed upon them of showing that they did not betray the trust and confidence reposed upon them.

The findings and the decree of the superior court of Cook County are fully supported by the evidence and its decree is, therefore, affirmed.

*Decree affirmed.*