Horstman Estate.

Argued September 29, 1959.  Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*John E. Britton,* with him *Gifford, Graham, MacDonald & Illig,* for appellant.

*Alban W. Curtze,* with him *Curtze & Gent,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, March 22, 1960:

Lillian C. Horstman, a resident of Erie County, died on May 2, 1957, survived by her husband, Walter Horstman, and several nephews and nieces.

On August 10, 1936—four years prior to her marriage to Walter Horstman—decedent made her last will and, upon her death, letters testamentary were issued to her niece, Mrs. Louise Quinn. Together with Walter Horstman and his counsel, Mrs. Quinn opened decedent's safe deposit box in the First National Bank of Erie, a box registered in the joint names of decedent and Mrs. Quinn. In that box were, inter alia, 115 United States Government Series "E" bonds, having a face value of $13,100, all of which bonds were registered as payable to decedent *or* some other named persons—nephews and nieces—as co-owners.[1] Decedent purchased these bonds with her own funds and kept them at all times in the safe deposit box to which only decedent and Mrs. Quinn had access.

In the Orphans' Court of Erie County Walter Horstman secured a rule upon Mrs. Quinn, as executrix, to show cause why these bonds should not be in-

---

[1] Horstman's name did not appear on any of these bonds although the bonds were all purchased subsequent to decedent's marriage to Horstman.

cluded in the inventory of decedent's estate. After the filing of answers and a hearing, that court dismissed Horstman's rule and granted leave to the executrix to distribute the bonds to the co-owners named therein. From that order Horstman appeals.

Horstman's only contention—gleaned from an examination of the pleadings and stipulated facts—is that the attempt by decedent to make gifts of these bonds to the several named co-owners failed because of lack of delivery and, therefore, the bonds still belong to decedent's estate.[2] The court below, relying upon the United States Treasury regulations which govern the issuance of these bonds, determined that the bonds belonged to the surviving co-owners and formed no part of decedent's estate.[3]

The question involved is whether, by virtue of the United States Treasury regulations governing the issuance of these savings bonds, decedent's registration of each of the bonds in the name of herself *or* another

---

[2] Section 11 of the Estates Act of April 24, 1947, P. L. 100, as amended by the Act of Feb. 17, 1956, P. L. 1073, 4, 20 PS §301.11 provides: "A conveyance of assets by a person who retains . . . a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, . . . ." All but five of the bonds were purchased subsequent to the effective date of the Act—January 1, 1948. The record indicates no claim on the part of appellant that the purchases of the bonds by decedent were in fraud of his marital rights, that the purchases constituted "conveyances" under Section 11, supra, or that appellant *elected* to treat the bond purchases as testamentary conveyances.

[3] The court below stated: "Were the instant determination to be based solely upon the application of the principles of *inter vivos* gifts without reference to . . . the United States Treasury Regulations, petitioner's position might have been well taken. However, the results to be reached here must also be in harmony with . . . the Treasury regulations".

named person passed a valid property interest in the bond to such other named person?

These savings bonds were issued pursuant to regulations promulgated by the United States Treasury Department under authority delegated by the Congress to the Secretary of the Treasury.[4] A Series "E" bond is issuable in one of three ways: (1) in the name of one person; (2) in the names of two, but not more than two, persons (a "co-owner bond"); (3) in the name of one person, payable on death to a designated beneficiary (a "beneficiary" or "POD" bond).[5] The bonds in controversy are all "co-owner bonds": as to such bonds, the regulations provide: (a) during the lives of both co-owners, the bond will be paid to either co-owner, upon surrender of the bond and without requiring the signature of the other co-owner, and, upon payment to either co-owner, the other co-owner shall cease to have any interest in the bond;[6] (b) during the lives of both co-owners, the bond, upon surrender thereof and upon joint request, will also be paid to both co-owners;[7] (c) except for mistake or change of name, the bond will not be reissued, during the lives of both co-owners;[8] (d) if either co-owner dies without the bond having been surrendered for payment, the surviving co-owner will be recognized "as the sole and absolute owner of the bond" and payment will be made *only* to such surviving co-owner by the United States Government.[9]

The regulations further provide that: (1) ". . . The form of registration used must express the actual ownership of and interest in the bond and, except as other-

---

[4] 31 U.S.C.A. §757(c) : Sec. 22, 49 Stat. 21, as amended.

[5] 31 C.F.R. §315.7.

[6] 31 C.F.R. §313.60(a).

[7] 31 C.F.R. §315.60(a).

[8] 31 C.F.R. §315.48, §315.49.

[9] 31 C.F.R. §315.61.

wise . . . provided . . ., will be considered as conclusive of such ownership and interest . . . .";[10] (2) "Neither the Treasury Department nor any agency . . . will accept notices of adverse claims or of pending judicial proceedings or undertake to protect the interests of litigants who do not have possession of a bond";[11] (3) except in certain instances not presently relevant, "Savings bonds are not transferable and are payable only to the owners named therein . . .";[12] (4) ". . . A claim against an owner or co-owner of a savings bond and conflicting claims as to ownership of or interest in such bond as between co-owners . . . will be recognized when established by valid judicial proceedings, and payment or reissue will be made, upon presentation and surrender of the bond, except as follows; (a) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by the regulations in this part upon a surviving co-owner or beneficiary . . .";[13] (5) "No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving co-owner . . ., and all other provisions of this sub-part are subject to this restriction."[14]

Although previously considered by appellate courts in other jurisdictions, the present question is one of first impression in this Court. In the vast majority of jurisdictions throughout the United States the surviving co-owner of a bond is considered the sole and

[10] 31 C.F.R. §315.5.
[11] 31 C.F.R. §315.20(b).
[12] 31 C.F.R. §315.15.
[13] 31 C.F.R. §315.13.
[14] 31 C.F.R. §315.20(a).

absolute owner of such bond, at least in the absence of proof of any fraud or other inequitable conduct: 168 A.L.R. 245; 173 A.L.R. 550; 37 A.L.R. 2d 1221, 1223, 1224 and cases therein collected. In Pennsylvania our county courts have subscribed to this view: *Prifer's Estate,* 53 Pa. D. & C. 103; *Evans' Estate,* 57 Pa. D. & C. 55; *Schablein Estate,* 68 Pa. D. & C. 634; *Thomas v. McGroarty,* 69 Pa. D. & C. 108; *Dowd v. Lynch,* 2 Fiduciary Rep. 242; *Graham Estate,* 3 Pa. D. & C. 218; *Andreas Estate,* 5 Pa. D. & C. 777; *Lingousky v. Gillespie,* 11 Pa. D. & C. 46.

The majority view takes the position that the question involved is not one of gift, but rather of contract and that the federal regulations, by reason of the authority of the Secretary of the Treasury to impose conditions upon the issuance of the bond and the incorporation by reference of such regulations in the bond, are part of the bond and constitute a contract between the bond purchaser and the issuer, i.e., the United States Government, and the surviving co-owner stands in the position of a third party beneficiary to such a contract. The minority view takes the position that "The contract between the government and the purchaser of Government bonds fixes the legal title to the bonds for the purpose of protecting the Government against suits involving title but does not and should not affect other legal rights of third parties or change settled rules of law not necessary to effectuate its purpose": *Moore et al. v. Brodrick,* 123 F. Supp. 108, aff'd 226 F. 2d 105 (C.C.A. 10) ; 37 A.L.R. 2d 1221 and cases therein collected. In some jurisdictions (for example, New York, Washington, Arizona) the majority rule has been incorporated in statutes: 37 A.L.R. 2d 1228, 1229.

While the identical problem has not been presented to our appellate courts, several cases throw some light on the general problem.

In *Katz, Admrx. v. Lockman,* 356 Pa. 196, 51 A. 2d 619, Lockman was the owner of United States savings bonds, having a face value of $7300, which were registered in his own name; Lockman and his son, Harvey, removed the bonds from the former's box and Lockman applied for a reissuance of the bonds in the names of "Samuel Lockman or Harvey Lockman" and the bonds were reissued in these names. After Lockman's death, his administratrix, alleging that Harvey Lockman had secured the transfer and assignment of the bonds through fraud and undue influence, brought a bill in equity seeking the transfer and delivery of the bonds to decedent's estate. The court below directed such transfer and delivery and this Court sustained its action. While the federal regulations were not mentioned in the Court's opinion, *Katz* held that fraud or inequitable conduct on the part of the surviving co-owner of a Government savings bond will defeat sole ownership of the *proceeds* of the bonds. In *Myers Estate,* 359 Pa. 577, 60 A. 2d 50, the decedent, Alfred Myers, purchased United States Savings Bonds with his own funds and registered them in the names of "Alfred R. Myers or Mrs. Hazel L. Wallick", the latter being his sister: decedent retained custody of the bonds in a safe deposit box rented in his name and that of his mother. The Commonwealth assessed a transfer inheritance tax upon the full value of these bonds and this assessment was upheld by the court below. Mrs. Wallick appealed to this Court on the ground, inter alia, that, under the federal regulations, a joint tenancy with right of survivorship was created and that the tax should have been assessed on only one-half of the value of the bonds. Without mentioning the federal regulations, this Court held that, since the decedent retained complete custody and exercised exclusive dominion over the bonds, Mrs. Wallick's possession and enjoyment of the bonds were

postponed until decedent's death; therefore, the Commonwealth could tax the entire value of the bonds since their transfer was not intended to take effect in possession or enjoyment until at or after death. *Estate of Diskin,* 105 Pa. Superior Ct. 519, 161 A. 893, while it considered "non-negotiable-non-transferable" postal savings certificates rather than United States savings bonds, is of interest. On August 4, 1930 Diskin gave an envelope containing postal savings certificates of the value of $2500 to a Mrs. Bundshuh stating, inter alia, "I am giving them to you to do with what you please". Mrs. Bundshuh retained the envelope without opening it until after Diskin's death three months later. The court compelled Diskin's administrator to pay the *proceeds* of the certificates to Mrs. Bundshuh.

A study of the terms and provisions of the federal regulations which control the issuance of Series "E" bonds leads us to the conclusion that such regulations fully govern the present situation.

The United States Constitution (Article I, sec. 8, cls. 2, 18) confers upon the Congress the right to borrow money upon the credit of the United States and to make all laws necessary and proper to effectuate that purpose and, within the orbit of such authority, the Congress acted when it conferred upon the Secretary of the Treasury the power to promulgate appropriate rules and regulations for the issuance of these bonds. Such regulations have the force and effect of law: *United States v. Birdsall,* 233 U. S. 223, 58 L. ed. 930; *United States v. Sacks,* 257 U. S. 37, 66 L. ed. 118; *Maryland Casualty Co. v. United States,* 251 U. S. 342, 349, 64 L. ed. 297; *United States v. Janowitz,* 257 U. S. 42, 66 L. ed. 120; *Hampton, Jr. and Co. v. United States,* 276 U. S. 394, 72 L. ed. 624; *Bowles v. Willingham,* 321 U. S. 503, 88 L. ed. 892; *Harvey v. Rackliffe,* 141 Me. 169, 41 A. 2d 455. Whenever the constitution-

al powers of the United States Government and those of a State conflict, the latter must yield (*Oklahoma ex rel. Phillips v. Atkinson & Co. et al.*, 313 U. S. 508, 85 L. ed. 1487; *Florida v. Mellon*, 273 U. S. 12, 17, 71 L. ed. 511; *Public Utilities Commission v. United States*, 355 U. S. 534, 2 L. ed. 2d 470) and such cession takes place when the Federal Government, acting within its constitutional authority, promulgates a rule as to the ownership of evidences of the Government's indebtedness.

When the Treasury Department, acting under Congressional fiat, sold these bonds to the decedent it did so under an agreement, upon which decedent, at least presumptively, relied, that in the event the bonds were not surrendered and payment received prior to the decedent's death, the surviving co-owners named in such bonds would be recognized as the *sole and absolute* owners of such bonds. The issuer of the bonds, i.e., the United States Government, covenanted with the decedent through the medium of the Treasury regulations, that, upon the registration of the bonds in co-owner form, such registration would be *conclusive* of the ownership and interest in the bonds. Upon the basis of that contract and agreement between the Government and the decedent the named surviving co-owners of these bonds, as third party beneficiaries, seek to establish their rights to the bonds. The rights of the surviving co-owners in these bonds arise not from a sale, a gift or a devise: they arise exclusively from the contract between decedent and the Government.

The design of the Treasury regulations is two fold: (1) "to prevent the Government from being involved in suits between claimants to Government bonds" and (2) "to protect the interests of the bondholders of these 'thrift' securities by preventing transfers": *Silverman*

*et al. v. McGinnes, etc.,* 259 F. 2d 731, 733, 734.[15] Regardless of the purpose or purposes of these regulations it is manifest that they enunciate a rule as to the ownership of this particular species of property in reliance upon which thousands upon thousands of individuals have purchased these bonds; to substitute a nebulous for a certain rule would create a condition which could conceivably interfere with the borrowing power of the Government.

To the almost universally accepted rule of the primacy of these federal regulations over the laws of the individual states in fixing the ownership of these bonds in surviving co-owners an exception is generally recognized. If it is established that the surviving co-owner of the bond was guilty of fraud or other inequitable conduct in connection with the issue or registration of the bond, or, that the purchaser was guilty of inequitable conduct in the purchase and registration of the bonds, such as acting in fraud of marital rights, many courts have properly taken the position that, even though the federal regulations absolutely control and govern payment of the amount of the bond to the surviving co-owner by the issuer, the Government, yet, upon payment being received from the Government by the surviving co-owner, the *proceeds* of the bond—not the bond itself—may be impressed with a trust: *Anderson v. Benson* (D.C. Neb.), 117 F. Supp.

---

[15] "The purpose of the treasury regulations is to protect and hold the federal government immune from any attack on its performance of the contract as made in the bond . . . they [the federal regulations] are designed to prevent the implication of the government in any disputes concerning ownership of the bonds, protect it from any suits which might result from payment to a designated beneficiary or co-owner, and, for the purpose of promoting sales, guarantee the performance of the government in strict accordance with the contract": *Katz v. Driscoll et al.* (Cal.), 194 P. 2d 822, 828.

765; *Re Hendricksen's Estate,* 156 Neb. 463, 56 N.W. 2d 711, cert. den. 346 U. S. 854, 98 L. ed. 368; *Henderson's Admr. v. Bewley* (Ky.), 264 S.W. 2d 680, cert. den. 348 U. S. 926, 99 L. ed. 726; *Conrad v. Conrad,* 66 Cal. App. 2d 280, 152 P. 2d 221; *Katz v. Lockman,* supra; *Ibey v. Ibey,* 93 N. H. 434, 43 A. 2d 157; *Chase v. Leiter,* 96 Cal. App. 2d 439, 215 P. 2d 756; *Makinen v. George,* 19 Wash. 2d 340, 142 P. 2d 910; *Union National Bank v. Jessell,* 358 Mo. 467, 215 S.W. 2d 474; *Roman v. Smith* (Ark.), 314 S.W. 2d 225; *Zimmerman v. Schuster,* 14 Ill. App. 2d 535, 145 N.E. 2d 94; *Tharp v. Besozzi* (Ind.), 144 N.E. 2d 430; *Bell v. Killian* (Ala.), 93 So. 2d 769; *Re Lundvall's Estate,* 242 Iowa 430, 46 N.W. 2d 535; *Reynolds v. Reynolds,* 325 Mass. 257, 90 N.E. 2d 338; *Oster v. Oster,* 414 Ill. 470, 111 N.E. 2d 319; *Thibeault v. Thibeault,* 147 Me. 213, 85 A. 2d 177; *Re Haas Estate,* 10 N. J. Super. 581, 77 A. 2d 523.

The instant record reveals neither averment nor proof of any inequitable conduct on the part of any or all of the surviving co-owners nor does Horstman aver or prove that the purchase and registration of these bonds in the names of decedent and the several nieces or nephews were in fraud of his marital rights. Absent such averments and proof not even the proceeds of these bonds are subject to controversy.

The federal regulations completely govern and control this situation; under those regulations the named surviving co-owners are conclusively the owners of these bonds and the executrix is under a duty to deliver the bonds to the named surviving co-owners. Had fraud or inequitable conduct been shown then the *proceeds* of these bonds might have been impressed with a trust.

Order affirmed. Costs equally divided between the parties.

518

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent. This case is ruled, contrary to the majority opinion, by the wisely decided cases of *Katz v. Lockman,* 356 Pa. 196, 51 A. 2d 619 and *Myers Estate,* 359 Pa. 577, 60 A. 2d 50.