Myers Estate.

Argued May 27, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edwin M. Buchen,* with him *Laird & Buchen,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Arthur Markowitz* and *T. McKeen Chidsey,* Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, July 6, 1948:

The question here is the right of the state to impose a transfer inheritance tax on the full cash value of bonds issued in the name of appellant as co-owner with her brother.

Appellant's brother, Alfred T. Myers, died on December 27, 1946, as a result of injuries sustained in a motor accident on December 25, 1946. In a safe deposit box rented from the Peoples Bank, Hanover, Pa., in his name and that of his mother, Mrs. Elizabeth M. Myers, were found United States Savings Bonds aggregating a total cash surrender value of $20,250. These bonds, issued in December 1945 and purchased with funds of the decedent, were registered in the names of "Alfred T. Myers or Mrs. Hazel L. Wallick", the latter being the appellant. The bonds consisted of a $5,000 Series E bond having a cash surrender value of $3750 and a Series G bond with a cash surrender value of $16,500. The appraisement for Pennsylvania Transfer Inheritance Tax, filed in the Register's Office of York County, Pennsylvania, on June 16, 1947, included the bonds in question and a transfer inheritance tax was assessed thereon. An appeal taken from this assessment by Mrs. Wallick to the Orphans' Court of York County was dismissed.

Appellant contends that the purchase of the bonds by Alfred T. Myers and their registration in his as well as her name as co-tenants constituted a valid gift inter vivos to her of a joint tenant's interest therein. Appellant says that the "regulations promulgated in Treasury Department Circular No. 530, Sixth Revision, pursuant to which these bonds were issued, constitute a part of

the contract between the United States and the holders thereof to the same extent as though the same were set forth at length in the body of the bond. According to those regulations (Sub-part L, Section 315.45)[1] the bonds here in question were payable to either co-owner upon his separate request, or to the survivor upon the death of one co-owner. Therefore, insofar as these bonds are concerned, the phrase 'Alfred T. Myers or Mrs. Hazel L. Wallick' is equivalent to the phrase 'Alfred T. Myers or Mrs. Hazel L. Wallick, either or the survivor of them'. This interpolated language clearly creates a joint tenancy with right or survivorship." Appellant also alleges that by virtue of the following provision in the Act of July 14, 1936, P. L. 44, 72 PS 2301, the transfer inheritance tax may be assessed on only one-half the cash value of the bonds: "Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, so that upon the death of one of them the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed

---

1.The federal regulations referred to were issued pursuant to the Public Debt Act of February 19, 1941, 55 Stat. 7, Title 31 U.S.C.A., Section 757 (c). Sub-part L, Section 315.45 (a) provides: "During the lives of both coöwners the bond will be paid to either coöwner upon his separate request without requiring the signature of the other coöwner; and upon payment to either coöwner the other person shall cease to have any interest in the bond. The bond will also be paid to both coöwners upon their joint request, in which case payment will be made by check drawn to the order of both coöwners . . ." Section 315.45 (c) states: "If either coöwner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving coöwner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor. . . ."

a transfer, taxable under the provisions of this act, of a fractional portion of such property, to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant."

The Commonwealth contends that the transfer of the bonds to appellant upon her brother's death is a taxable transfer under Section 1(c) of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS 2301, which imposes a tax: "(c) When the transfer is of property made by a resident, . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." and that no valid gift inter vivos was executed since no delivery of the bonds was made and the decedent at any time prior to his death could have revoked or nullified the prospective transfer of the bonds to the co-owner.

The general rules governing gifts, inter vivos, are set forth in *Fitzpatrick v. Fitzpatrick,* 346 Pa. 202, 29 A. 2d 790, to wit: " 'To constitute a valid gift inter vivos, there are two essential elements: (1) an intention or purpose to give, accompanied by (2) a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the property, but also to invest the donee with complete control over the subject matter of the gift.' "

The decedent here retained complete custody of the bonds and exercised exclusive dominion over them. No intent to transfer possession or control on Myers' part had been established by the appellant. Possession and enjoyment, therefore, did not vest until his death. In *Leach's Estate,* 282 Pa. 545, 128 A. 497, this Court held that the relation of joint tenants exists where there has been established a single estate in property, real or personal, so that two or more persons interested therein become owners under an express agreement. In such case the one who survives does not take the moiety of

the other tenant from him as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created, for title by survivorship is held to follow as an incident thereto.

In this record we find no proof of an interest taking immediate effect in the donee. In determining whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately, or as not effective in possession or enjoyment until at or after the death of the donor, the criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime. See *Glosser Trust*, 355 Pa. 210. Although it is true that the bonds were legally redeemable upon their presentation by either the appellant or her brother, this legal right was incapable of performance by appellant since her brother had not irrevocably parted with possession and enjoyment during his lifetime, but had held exclusive possession of them. The facts here differ from the situation in *Cochrane's Estate*, 342 Pa. 108, 20 A. 2d 305, where it was held that where one contributed the entire sum to a joint bank account, the rights of each of the tenants to the joint fund are the same, the one who made the contribution has by that act made an immediate gift to the other.

Among the cases in other jurisdictions treating this subject are *Hallett v. Bailey*, 54 A. 2d 533 (Supreme Judicial Court of Maine) ; *Mitchell et al. v. Carson*, 209 S. W. 2d 20; and *Succession of Raborn*, 210 La. 1033, 29 So. 2d 53. In *Mitchell et al. v. Carson*, supra, the Supreme Court of Tennessee held that where United States Savings Bonds payable to nieces and nephews at the owner's death, or payable to the owner or nieces and nephews, remained in the owner's possession until her death and the owner had the right to cash the bonds during her life, the transfer of possession, ownership and enjoyment of the bonds to the nieces and nephews

took effect at the death of the owner so as to subject the bonds to an inheritance tax. The court in its opinion stated: "The statement that these bonds vested in the beneficiaries named therein 'immediately upon issuance' is not entirely accurate from a practical point of view. . . . there was reserved to Miss Mitchell the 'right of cashing them during life' so long as they remained in her possession. . . . Nor did the beneficiaries have any right to demand of Miss Mitchell that she surrender possession. So, as to the question involved in this suit two controlling facts exist, to wit: (1) Miss Mitchell owned an interest in these bonds which at her option was determinable only by her death, and (2) by reason of the retention (which we must presume was intentional) of possession by Miss Mitchell, the possession and enjoyment of these bonds by the beneficiaries took effect only upon the death of Miss Mitchell. These two facts bring these bonds squarely within the provisions of our Inheritance Tax Law. . . . The retention of possession by Miss Mitchell until her death conclusively establishes it to have been her intention that the ownership of these bonds by the beneficiaries should take effect in possession or enjoyment upon her death."

Both appellant's possession and enjoyment of the bonds in question were postponed until the donor's death since no previous access to them was made available to her. To permit a transfer inheritance tax exemption on all government bonds issued in the co-owner-ship form without examining the circumstances of each case, would encourage the practice of investing one's estate in such bonds and registering them in joint names for the purpose of circumventing the payment of a legitimate exaction. The court below properly decreed that the full appraised value of the bonds which devolved to appellant are subject to a transfer inheritance tax.

The decree is affirmed at appellant's cost.