## Schablein Estate

*Maynard Stapleton,* for accountant.
*Melvin H. Jenkins,* for Grace Ford Artz.

GANGLOFF, P. J., March 21, 1949.—Albert Shablein died on June 18, 1948, intestate, leaving to survive as his nearest kin and only heir at law entitled to his estate under the Intestate Act of 1947 a niece, namely, Grace Ford Artz, who is the legally adopted child of a deceased sister: see Cave's Estate, 326 Pa. 358; Reamer's Estate, 331 Pa. 117; sections 3(3) and 8 of the Intestate Act of April 24, 1947, P. L. 80.

The account of the administrator shows a balance on hand of $6,037.62. At the audit hearing a statement was filed and made part of the record showing receipt, since filing the account, of $94.10 in the form of a refund of income tax for 1948; and showing also additional expenditures of $475.43 for balance of transfer inheritance tax, 50 cents for register's costs and $4.71 for accountant's commission. The additional debit and credits decrease the balance for distribution to $5,651.08.

The above balance consists of five United States savings bonds, series G, together appraised at $5,000; a $100 United States defense savings bond; a $50 United States war savings bond and two $25 United States war savings bonds, all series E, together appraised at $164.50, and cash $486.58. The sole heir has elected to take these securities in kind.

Included in the inventory and appraisement as part of the decedent's estate are the following bonds, each

registered in the names of decedent and John Schablein, namely:

| | |
|---|---|
| $50 United States war savings bond, series E, dated January 31, 1944, appraised at | $40.00 |
| $50 United States war savings bond, series E, dated December 8, 1944, appraised at | 39.50 |
| $25 United States war savings bond, series E, dated November 14, 1943, appraised at | 20.25 |
| $25 United States war savings bond, series E, dated June 22, 1945, appraised at | 19.25 |
| | $119.00 |

Accountant charges himself with the total amount of the inventory including, of course, the above bonds together appraised at $119, but under credits claimed he deducts the appraised value of these bonds. Notwithstanding this deduction, the question is raised as to who is liable for the transfer inheritance tax on these bonds and along with that the accountant desires instructions upon the question of ownership of these bonds.

The accountant paid the transfer inheritance tax upon the entire estate including the bonds jointly held.

The jointly held bonds in this case were admittedly in the possession and under the sole control of decedent up until the time of his death. In other words, the other joint owner could not have cashed the bonds in the lifetime of decedent without the latter's consent or coöperation. The bonds were included with other assets of decedent's estate in the assessment for transfer inheritance tax. It does not follow that because the jointly held bonds were so included they must be treated as part of decedent's estate passing to his heir under the Intestate Laws, and this is so for the reason that the appraiser must include in one appraisement all the taxable assets of decedent's estate: Cochrane's Es-

tate, 342 Pa. 108. The latter case involved joint bank accounts and what was said there by the court (page 112) has application here, namely:

"Appellant also contends that the appraisal and assessment . . . is void, because it assesses a single tax and that against the executor and includes a tax on the fund in the joint bank accounts which does not go through its hands. This is based upon the assumption that the appraiser appraised one-half of the joint bank accounts as part of the estate of the decedent in the hands of the executor and that the assessment with respect to such accounts was made against it. The State appraiser is required to appraise in one assessment the various items constituting the taxable estate of the decedent, real estate, assets donated in contemplation of death, those comprising a gift to take effect at or after death, funds in joint bank accounts, etc. The Statute (Transfer Inheritance Tax Law of June 20, 1919, P. L. 521 . . .) contemplates only one appraisement of all the taxable assets of the decedent's estate."

Because decedent here retained complete custody and exercised exclusive dominion over the bonds in question the transfer inheritance tax was properly assessed against the total appraised value of the bonds rather than one half thereof: Myers Estate, 359 Pa. 577; see also Graham Estate, 358 Pa. 383.

The next question is, who must pay the inheritance tax? The tax is ultimately payable by the legatee or out of the estate passing to him, unless the will clearly indicates, either expressly or by necessary implication, that the legacy was given free of the tax: Spangenberg Estate, 359 Pa. 353. Of course, we do not have a will here, nevertheless the principle stated is applicable here. To whom did title and complete ownership of the bonds pass upon the death of the deceased coowner, decedent here?

Presumably decedent paid for the bonds in question. He did so under Federal regulations issued pursuant to

Public Debt Act of February 19, 1941, 55 Stat. at L. 7, 31 U. S. C. §757(*c*). Sub. part L, section 315.45(*a*) provides:

"During the lives of both co-owners the bond will be paid to either co-owner upon his separate request without requiring the signature of the other co-owner; and upon payment to either co-owner the other person shall cease to have any interest in the bond . . ."

Section 315.45(*c*) states:

"If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor . . ."

The above regulations of our Federal Government from which the bonds in question were purchased are clear and explicit. The question of ownership of United States Treasury series E bonds registered in the name of a decedent or/and another person was before this court in Prifer's Estate, 53 D. & C. 103. We there decided that the purchase of the bonds was from the United States Government under an express contract that upon the death of a coowner the survivor thereby became, and would be recognized as, sole owner regardless of any statutory provision or regulation of the Commonwealth of Pennsylvania to the contrary. All this was predicated upon the proposition that the bonds were issued under the constitutional powers of the Federal Government and that where such powers of the Federal Government come into conflict with those of a State in a matter such as here under consideration the State must yield: see Florida v. Mellon, Secretary of Treasury, et al., 273 U. S. 12; Oklahoma ex rel. Phillips v. Guy F. Atkinson Co. et al., 313 U. S. 508.

Nor do Graham Estate or Myers Estate, supra, hold otherwise. In each of these cases the question before the court was one of taxation and in each of these cases it is clearly recognized that ownership of the bond upon the death of the coowner was in the survivor. In the Myers case appellant was not the estate of decedent but the surviving coowner, thus clearly indicating that the survivor was the one called upon to pay the tax. Furthermore, in Myers Estate, it is clearly pointed out that the tax was properly assessed and was payable upon the whole value of the bonds because actual ownership did not pass to the survivor until the death of the coowner. In other words, actual enjoyment of the bond did not pass or vest until the death of the coowner and, of course, because of that circumstance a tax was payable.

Of course, it hardly seems necessary to mention that the transfer to the survivor of the coowners was not a testamentary disposition because it is plainly apparent that the transfer does not measure up to the requirements of the Wills Act.

The bonds in question having passed to the surviving coowner upon the death of decedent the tax is payable by the survivor: see Spangenberg Estate, supra. Although the accountant paid the tax out of funds of decedent's estate the fact is that the bonds do not pass through his hands as part of decedent's estate for distribution by him and what is said in Cochrane's Estate, supra, on page 112, is applicable here:

"Who shall pay the tax depends upon who receives the property. The Commonwealth may be required to look to several sources in order to obtain the aggregate amount of the taxes. The only tax which is chargeable against the personal representative is that on the assets passing through its hands, which it is required to de-

duct from each distributive share. For the tax on the other assets of the estate, which do not pass through its hands, the Commonwealth must look to the individuals receiving the property."

In view of the foregoing we must surcharge accountant in the sum of 10 percent on $119 or $11.90 less five percent discount, $11.30, thereby increasing the balance for distribution to $5,662.38. This surcharge must be collected from John Schablein.