## Davis Estate

*Frank L. Seamans*, for appellant.

*Charles W. Herald*, for Commonwealth.

RAHAUSER, J., December 12, 1957.—A petition on appeal from the inheritance tax appraisement was filed April 26, 1957, alleging that decedent, Beatrice J. Davis, a resident of Allegheny County, died intestate on March 9, 1956. Letters of administration were granted to Beatrice D. Carman by the Register of Wills of Allegheny County on April 26, 1956. The petition further alleges the Commonwealth of Pennsylvania erroneously assessed a 15 percent inheritance tax on $26,591.11, being the one-half value of certain series E savings bonds held jointly by decedent and one-half the amount of two jointly held bank accounts.

The petition was executed by the administratrix and the brother of decedent, John D. Davis. They prayed that their appeal may be sustained and that the assessment may be set aside. A hearing date was set for September 25, 1957.

The facts developed at the hearing proved that decedent was a spinster who lived with her brother, John D. Davis, that she had no money of her own and that all her living expenses and valuables which she possessed were given to her by her brother, John D. Davis, one of the petitioners.

During decedent's lifetime John D. Davis purchased certain United States Series E Savings Bonds. The

bonds were purchased with Mr. Davis' funds and he caused them to be issued in the following manner: Forty-eight of these bonds were issued in the names of Beatrice Jeannette Davis (decedent) or Beatrice Ellen Davis, now known as Beatrice D. Carman. The first group of bonds had an aggregate value on the date of decedent's death of $4,185.50. Forty-six bonds were issued in the names of Beatrice Ellen Davis or Beatrice Jeannette Davis. At the date of decedent's death these 46 bonds had an aggregate value of $3,972.20. One bond was issued in the names of Beatrice Jeannette Davis or John D. Davis and had a value on March 9, 1956, of $26.12. The final bond purchased by Mr. Davis was issued to Beatrice Jeannette Davis, payable on death to Beatrice Ellen Davis. This bond had a value of $55.40 on the date of decedent's death.

The information concerning the purchase and issuance of these bonds, together with other information concerning the estate of decedent, was disclosed to the register of wills, as agent for the Commonwealth, by Beatrice D. Carman, administratrix of the estate of Beatrice J. Davis. On February 25, 1957, P. J. O'Malley, an appraiser, filed with the Register of Wills of Allegheny County, an inheritance tax appraisement of the estate of Beatrice J. Davis which appraised, as taxable, the one Series E United States Savings Bond which was issued in the name of Beatrice Jeannette Davis, payable on death to Beatrice Ellen Davis, and the remaining Series E United States Savings Bonds on which decedent's name appears as taxable at one-half their value.

John D. Davis further testified concerning the purchase of the said bonds, issued in the names of either Beatrice Jeannette Davis or Beatrice Ellen Davis, that they were purchased by him pursuant to a payroll savings plan inaugurated at his place of employment.

He testified that he purchased these bonds personally and that following their purchase he placed them in a safe deposit box in the Mount Lebanon Branch of the Commonwealth Trust Company of Pittsburgh which was leased to him and his daughter, Beatrice Ellen Davis, now known as Beatrice D. Carman. As to the one bond which was issued to Beatrice Jeannette Davis or John D. Davis and the one bond which was issued to Beatrice Jeannette Davis payable on death to Beatrice Ellen Davis, Mr. Davis testified that he had also purchased these bonds with his own funds. He testified that the two latter classes of bonds were not purchased pursuant to the payroll savings plan. However, these bonds were like the other bonds purchased personally by Mr. Davis and placed in the same safe deposit box as the other bonds. Mr. Davis also testified that none of these bonds were ever delivered to decedent and that from the time these bonds were purchased until decedent's death, decedent was never a joint lessee of the safe deposit box in which these bonds were kept. Mr. Davis stated that it was his intention in purchasing these bonds to provide a fund which would be readily available either to his daughter or to decedent "in case anything happened to him." He also testified that he did not intend to make a present gift of these bonds.

The court is of the opinion that the transfer inheritance tax on the bank account was proper but that the inclusion of the United States Savings Bonds in the assessment can not be sustained.

This testimony clearly shows that there was never any valid gift inter vivos of these bonds by Mr. Davis to decedent.

It is elementary that to constitute a valid gift inter vivos two essential elements are necessary: (1) An intention or purpose to give, accompanied by; (2) a delivery, actual or constructive, of a nature sufficient not only to divest the donor of all dominion over the

property, but also to invest the donee with complete control over the subject matter of the gift: Chadrow v. Kellman, 378 Pa. 237; Tomayko v. Carson, 368 Pa. 379; Myers Estate, 359 Pa. 577; Dempsey v. First National Bank of Scranton, 359 Pa. 177. It is, therefore, clear that if either of these essential elements is lacking, there is no valid gift inter vivos.

In the Dempsey case, supra, it was held that the lack of a clear and unmistakable intention on the part of the donor to make a gift of her property prevented a finding of a valid gift inter vivos. In that case decedent had her savings account transferred to herself and two other persons. One of these persons, the claimant, withdrew part of the funds in the account and purchased bonds in the name of himself and the other party to the account. When decedent discovered this, she demanded that he cash the bonds and restore the money to the account. This was done but, before the checks in payment of the bonds could be endorsed by claimant, decedent died. Claimant then brought this action against the bank for the return of the checks. In the trial of this action claimant denied that he had promised to return the money to decedent and contended that there was a valid gift inter vivos, which was proved by the signature card executed by all the parties. The representatives of decedent's estate introduced testimony to the effect that decedent had executed the signature card in question in order to facilitate the handling of her financial affairs and did not intend to make a gift of any part of the account to either of the other persons who were thereby entitled to withdraw funds therefrom. The court held that no valid gift inter vivos had been proved and that the estate was entitled to the return of the money.

The court is of the opinion that there never was a delivery of the said bonds to decedent or her niece.

In Myers Estate, 359 Pa. 577, decedent purchased certain United States Savings Bonds with his own funds, had them issued to himself or the appellant and placed them in a safe deposit box leased to decedent and his mother. The Commonwealth assessed the bonds as being taxable at their full value, while appellant contended there had been a valid gift inter vivos to him of a joint interest in the bonds and, therefore, the bonds should be taxable at one-half their value. The lower court held that the bonds were taxable at their full value because there was no valid gift inter vivos of the bonds and, therefore, the tax was properly imposed as on a gift which was intended to take effect in possession of enjoyment at or after the death of the donor. This decision was affirmed by the Supreme Court. The court held that to establish a valid gift inter vivos the two essential elements of an intention to give and a delivery sufficient to divest the donor of all dominion over the property and to invest the donee with complete control over the gift, must be shown by claimant. The court held that claimant had not shown that there had been any effective transfer of any interest in these bonds to him during decedent's lifetime and, therefore, held that the gift did not take effect in enjoyment or possession until after the death of decedent. In so holding the court said, at page 581:

"In this record we find no proof of an interest taking immediate effect in the donee. In determining whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately, or as not effective in possession or enjoyment until at or after the death of the donor, the criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime. See Glosser Trust, 355 Pa. 210. Although it is true that the bonds were

legally redeemable upon their presentation by either the appellant or her brother, this legal right was incapable of performance by appellant since her brother had not irrevocably parted with possession and enjoyment during his lifetime, but had held exclusive possession of them."

In Kantner Estate, 3 Fiduc. Rep. 81, decedent was the sole owner of certain United States Savings Bonds. She caused these bonds to be reissued in the names of herself and her daughter. After the reissuance the bonds were placed in a safe deposit box which, at that time, was leased to them jointly. Prior to decedent's death decedent terminated her lease in the safe deposit box and from that time until decedent's death the safe deposit box was rented solely to the daughter (the surviving coöwner). The court held that no part of the value of these savings bonds was subject to a transfer inheritance tax on the death of decedent. In so holding the court said, at pages 92 and 93:

"Appellant contends that only one-half of the value of the bonds should be appraised and further, that the basis of that valuation should be the redemption value as of the date of death and not the face value thereof at maturity. With neither the Commonwealth's nor the appellant's first contention do we agree; our conclusion is that these bonds are not subject to any inheritance tax. We have already found that Mrs. Kantner did not transfer her property in contemplation of death within the Inheritance Tax Act. No part of these bonds were the property of Mayme S. Kantner at the time of her death. In reaching this conclusion we have relied upon Evans' Est. 57 D. & C. 55, and Myers Est., 61 York 181, the latter affirmed in 359 Pa. 577; moreover, this conclusion is not in conflict with Prifer's Est., 53 D. & C. 103.

"In Evans' Estate; supra, Judge Richards held, as succinctly stated in the syllabus: 'Where U. S. savings

bonds are registered pursuant to regulations of the Treaury Department in the names of A and B as co-owners, no joint tenancy is created under Pennsylvania law except in the case of husband and wife, although a right of survivorship exists.' In that case the court held that the ten U. S. savings bonds, registered in the names of 'Henry S. Evans or Miss Georgina Evans Bevan' were co-owner bonds and since the possession was at all times exclusively in Henry S. Evans, whose money alone purchased said bonds, even though upon the instant death of Henry S. Evans the title and ownership thereof survived to and became vested in Miss Georgina Evans Bevan, the full face value of the bonds were properly taxable under Sec. 1(c) of the Pennsylvania Transfer Inheritance Tax Act. The significance of the opinion appears in two sentences: 'The tax problem here involved is inextricably interwoven with the question of ownership' and later, 'The one in possession of the bonds was in a position to control them.'

"In the instant case we have no doubt that had Mrs. Kantner allowed the bonds to remain in the box jointly possessed by her and her daughter and further, had that possession continued until her death, these bonds would have been subject to the transfer inheritance tax as was so decided in Evans' Estate; when, however, she relinquished all elements of possession of those bonds on October 24, 1950 and placed the full, complete and absolute possession and control of those bonds in Nancy Kantner Ream, she thereby placed them beyond the scope of the inheritance tax act."

The cases illustrate the principle that the propriety of the inheritance tax depends upon the interests which decedent had in the bonds at the time of death, and as this decedent had no interest in said bonds, the appeal here must be sustained insofar as the United States Savings Bonds are concerned.

A decree will be drawn in accordance with this opinion.

### Decree

Before Cox, Rahauser and Wolk, JJ.

PER CURIAM, March 3, 1958.—And now, March 3, 1958, upon further consideration of the above-entitled case, it is ordered, adjudged and decreed that the exceptions filed on December 23, 1957, to the decree of this court entered on December 12, 1957, sustaining an appeal from appraisement, be and the same are hereby dismissed for the reasons set forth in the opinion of the hearing judge.