Secary Estate.

Argued March 15, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused May 16, 1962.

*Nathaniel A. Barbera,* with him *Shaver and Barbera,* for appellant.

*Wayne G. Wolfe,* with him *Frank A. Orban, Jr.,* and *Spencer, Custer, Saylor & Wolfe,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 17, 1962:

The question involved is narrow. Was decedent's brother entitled to the contents of a safe deposit box under the written lease thereof?

Arthur Secary died intestate on December 23, 1958, at the age of 49. He was survived, inter alia, by his widow, Kay G. Secary, and his mother, Mabel Sicheri, also known as Mabel Secary, as his sole heirs at law, and a brother, Lewis D. Secary, who is the present appellant.

On December 31, 1958, letters of administration were issued to his widow, Kay G. Secary. Included in

the inventory and appraisement were certain contents of safe deposit box number 541B in the Moxham National Bank of Johnstown. These consisted of $109,240 in cash, an agreement of lease dated October 1, 1945, between Bird Coal Company and decedent and an extension of this lease, and 24 shares of stock of the American Telephone & Telegraph Company dated May 12, 1958, in the name of Arthur Secary. The box also contained 12 Certificates of Indebtedness of North Fork Country Club in the amount of $25 each, and 7 U. S. War Savings Bonds totaling $375 in face value which were in the names of Arthur Secary or Mary Secary;[*] these were not listed in the inventory.

The inventory and appraisement also included (a) a checking account in the Moxham National Bank of Johnstown in the name of Kelso Coal Company in the amount of $12,745, and (b) cash contained in envelopes and located in decedent's home in the amount of $8,905.

Appellant, Lewis D. Secary, filed several objections to the inventory and appraisement, but only two are pressed on this appeal, namely, the ownership of the contents of the safe deposit box and the North Fork Country Club certificates, all of which the Orphans' Court held belonged to Arthur Secary's estate.

We start with the well settled principle that claims against a dead man's estate, including a claim of a gift inter vivos, can be established only by evidence which is clear, direct, precise and convincing: *Petro v. Secary Estate*, 403 Pa. 540, 543, 170 A. 2d 325.

Appellant contends that he has met the burden of proof by presentation in evidence of the lease of safe deposit box number 541B which was executed by both Appellant and decedent. Appellant contends that this

---

[*] Decedent's first wife. This marriage ended in divorce in 1954, three months before decedent married Kay G. Secary.

lease created a valid inter vivos gift of a joint interest with right of survivorship in all the contents of the box, and that the gift thus created was corroborated by oral testimony.

The lease pertinently provides: "Lessor and lessees covenant and agree to and with each other that said box and said space is leased subject to the following terms, conditions, agreements, rules and regulations: . . .

"J. C. *In case the Lessees are joint tenants,** including husband and wife, it is hereby declared that all property of every kind at any time heretofore or hereafter placed in said box is the joint property of both Lessees and, upon the death of either, passes to the survivor subject to inheritance tax laws. Each of the Lessees shall have full access to and the control of the contents of said box without further authority. The Lessor shall not be liable, in the event that property belonging to the joint tenants having access to said box be misappropriated by one or more of those having access. Each or all of the Lessees may appoint a deputy to have access to or surrender the box. . . .

"Lessees hereby acknowledge the receipt of two keys to said box and space".

Appellant bases his claim on *King Estate,* 387 Pa. 119, 126 A. 2d 463. In that case the lease was identically the same as the lease in the instant case, but the Court held that in the light of the oral evidence the contents of the box belonged to the surviving tenant.

The law on the subject of joint accounts was in a state of confusion due (a) to the fact that the alleged gifts were often evidenced or created by differently worded signature cards or other written instruments or by oral evidence; (b) the fact that in many instances the written instruments (which were executed

---

* Italics throughout, ours.

had been prepared by a bank to cover nearly every conceivable transaction) contained such broad or general language as to be equivocal or ambiguous; (c) the failure to distinguish between an ordinary gift and the gift of a joint interest; (d) practical considerations, especially with respect to the delivery of the contents of a singly or jointly owned safe deposit box; and (e) the uncertainty as to whether the transaction constituted a gift causa mortis, an inter vivos gift, or a contract.

In an attempt to clear up the confusion* we stated and established the principles of law which are applicable in an alleged gift of a jointly owned safe deposit box or the contents thereof (pages 122-124):

"To constitute a valid gift inter vivos of the contents of a safe deposit box, two essential elements are requisite: An intention to make an immediate gift, and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein. The burden of proof is upon the claimant to prove the gift by clear and convincing evidence: Tomayko v. Carson, 368 Pa. 379, 83 A. 2d 907. Where an owner of a safe deposit box and his donee execute a contract or lease which recites that the property therein is the joint property of the lessees, with right of survivorship, and that the lessees acknowledge the receipt of two keys to said box—this creates a prima facie case of a valid inter vivos gift of a joint interest (with right of survivorship) in said property. The majority view appears to be that parol evidence is admissible (a) to prove

---

* The confusion is analyzed and reviewed in the majority and dissenting opinions in *Chadrow v. Kellman*, 378 Pa. 237, 106 A. 2d 594.

an intention, or lack of intention, to make a gift as well as (b) delivery or failure of delivery, because the instrument is considered to be incomplete or (sometimes) equivocal. Cf. Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85. However, it is established that the parol evidence which is necessary to disprove such gift must be clear, precise and . . . [convincing]. Cf. Furjanick Estate, 375 Pa., supra; Fell Estate, 369 Pa., supra; Mader v. Stemler, 319 Pa., supra; Dempsey v. National Bank of Scranton, 359 Pa., supra.

". . . [S]uch a contract creates a prima facie valid inter vivos gift of a joint interest (with right of survivorship) in all the property in said box, and the burden of proof shifts to the parties contesting the gift to prove a want of intention or a failure of delivery. This burden they have failed to sustain."

The Court then analyzed the oral evidence and found that it supported the contract and a completed inter vivos gift to the donee because, inter alia, (1) when King changed his safe deposit contract with the bank from his name to that of himself and his wife, he told the bank custodian he did not want his wife merely to have access, he wanted a joint contract, (2) King and his wife each possessed a key to the box, and (3) King and his wife had each separately exercised their respective right of access to the box, and consequently King's executrix failed to sustain her burden of proof, viz., to prove a want of intention by King or a failure of delivery. The Court then distinguished *Chadrow v. Kellman,* 378 Pa. 237, 106 A. 2d 594, for the reason that in that case the Court held there had been no valid inter vivos gift because "It is conceded that decedent alone received and kept both keys to the box and that claimant never had possession of either key and never had access to the box . . . since claimant

---

* Footnote omitted.

never had access to the safe deposit box, the donor did not divest himself of dominion over the property claimed. . . ."

These facts point up the distinction between *King Estate* and the instant case. In the instant case the uncontradicted evidence shows that decedent entered safe deposit box number 541B on *33* separate occasions between May 26, 1950,[*] and December 23, 1958 (the date of his death), while on the other hand Appellant entered the box only twice—both occasions being *after Arthur Secary's death and in the company of Arthur's widow.* Furthermore, *both* keys to the box were kept in decedent's home and on the two occasions when Appellant entered the box, decedent's widow produced the key because Appellant did *not* have a key in his possession.

It is important to further note that the stock, the coal company lease, the country club certificates and the War Savings bonds were all in the name of the decedent (or his former wife) and claimant never asserted that these or the cash which was found in the box had ever been his individual property.

In the light of this clear, uncontradicted and convincing evidence we conclude that Arthur Secary's estate sustained its burden of showing a failure of delivery of the box and its contents to Appellant: *Chadrow v. Kellman,* 378 Pa. 237, 106 A. 2d 594. Cf. *King Estate,* 387 Pa., supra; *Grossman Estate,* 386 Pa. 647, 126 A. 2d 468.

Decree affirmed, costs to be paid by Appellant.

---

[*] The safe deposit box was originally leased on December 20, 1948. No evidence appears in the record to indicate how many times or who gained access to the box between December 20, 1948, and May 26, 1950.