## Monheim Estate.

490

Argued March 13, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Frederick N. Frank,* Assistant Attorney General, with him *John M. Duff,* Deputy Attorney General, and *Israel Packel,* Attorney General, for Commonwealth, appellant.

*Ivan E. Birsic,* with him *Cauley, Birsic & Conflenti,* for appellee.

Opinion by Mr. Chief Justice Jones, May 4, 1973:

At issue in this appeal is the amount of transfer inheritance tax due on United States Government bonds valued at $48,760 which were registered in the names of the decedent, Mabel J. Monheim, and her sister,

Frances Monheim, at the time of the decedent's death.[1] The Commonwealth sought to impose transfer inheritance tax on 100% of the face value of the bonds at the time of death. The claim was denied by the administratrix, who asserted that under the provisions of Section 241 of the Act, the bonds were only taxable at 50% of their face value.[2] The Commonwealth filed its claim in the Orphans' Court Division of the Allegheny County Common Pleas Court, which upheld the administratrix's position limiting the imposition of the tax to 50% of the face value. Exceptions to the decree filed by the Commonwealth were dismissed and a final decree entered. The Commonwealth appealed to this Court. We affirm the decree of the Common Pleas Court.

The facts of this case were introduced by stipulation and are not in dispute. Mabel, Frances and Joseph Monheim were brother and sisters. None of them ever

---

[1]. The tax is imposed pursuant to the provisions of the Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 P.S. §2485-101 *et seq.* [hereinafter referred to as the Act].

[2] Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, §241, 72 P.S. §2485-241:

"Joint Tenancy

"When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons, so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant. This section shall not apply to property and interests in property passing by right of survivorship to the survivor of husband and wife. If the co-ownership was created in contemplation of death, within the meaning of section 222 of this act, the entire interest so transferred shall be subject to tax only under section 222, as though a part of the estate of the person who created the co-ownership."

married and prior to Mabel's death they lived together. Mabel and Joseph held outside jobs and Frances was responsible for the housework. It was stipulated that there was an understanding among the members of the family that Mabel and Joseph would provide for Frances' care and support during her lifetime in consideration for her homemaking contribution to the family unit. It was further stipulated that Frances utilized both Mabel and Joseph to transact her business for her and that they acted on her behalf frequently. Concerning the bonds at issue in this case, it was stipulated that Frances knew that Mabel was purchasing the government bonds in their joint names and knew that the bonds were kept in a safe deposit box in the Pittsburgh National Bank registered jointly in the names of Joseph and Mabel. Both Joseph and Mabel had keys to the safe deposit box and access to it. Finally it was stipulated by the family and agreed to by the Commonwealth that, although a request was never made by Frances, Joseph could and would have secured the joint bonds from the safe deposit box and delivered them to Frances upon request by her.

It is agreed by all that if Frances Monheim had access to the bonds, which were owned jointly by her and the decedent, they are only taxable at 50% of their face value in accord with Section 241 of the Act. However, the Commonwealth contends that, since Frances' only access to the safe deposit box was through her brother, Joseph, she did not have a right of possession sufficient to support a valid gift inter vivos and therefore the tax should apply to 100% of the face value. The appellee contends that where jointly titled bonds are held in a safe deposit box registered in the name of one co-owner and the agent for the purpose of access of the other co-owner, the co-owner represented by the agent has exactly the same right of possession

she would have if she were a joint holder of the safe deposit box containing the bonds.

Cases involving the proper assessment of transfer inheritance tax against jointly held assets have been before this Court on prior occasions. As noted by Mr. Chief Justice Maxey in *Myers Estate,* 359 Pa. 577, 60 A. 2d 50 (1948), it is necessary to examine the circumstances of each case where assets have been placed in jointly registered bonds to determine that joint ownership is not used as a device to circumvent the payment of a legitimate exaction. In this case it appears that the bonds were purchased in joint names by the decedent to insure that both the decedent and her sister, Frances, would be adequately provided for in their old age. It is immaterial that the money used to purchase the bonds came from the decedent. *Cochrane's Estate,* 342 Pa. 108, 20 A. 2d 305 (1941). In determining whether transfer inheritance tax should be applied to the entire sum held in joint names or only to half of it, the critical factor is whether the joint tenants had equal rights to the possession, ownership and enjoyment of the fund prior to the death of one joint tenant.

In *Graham Estate,* 358 Pa. 383, 57 A. 2d 853 (1948), government bonds purchased by one sister in joint names with another sister were kept in a safe deposit box registered to both parties and to which both had equal access. We affirmed the assessment of transfer inheritance tax against the surviving co-owner based on one-half the value of the bonds.[3] In *Myers Estate,* supra, we held that bonds purchased jointly in the name of the decedent and his sister and kept in a

---

[3] The tax was imposed under the provisions of Section 1(e) of the Act of June 20, 1919, P. L. 521, *as amended* by the Act of July 14, 1936, P. L. 44. Although the earlier acts were repealed by the present Inheritance and Estate Tax Act of 1961, the provisions governing taxation of joint interests were reenacted in substantially the same form. *See* note 2 *supra.*

safe deposit box registered to the decedent and his mother were subject to transfer inheritance tax on their full value. We determined that since the brother "retained complete custody of the bonds and exercised exclusive dominion over them" during his lifetime, the sister did not enjoy sufficient possession or control over the bonds to create a valid gift inter vivos. *Myers Estate* was relied on most recently in *Beggy Estate,* 446 Pa. 166, 285 A. 2d 89 (1971), where we held that transfer inheritance tax was properly applied to 100% of the value of bonds purchased in joint names of the decedent and another and kept in a safe deposit box registered in the decedent's name only. Again the rationale was that the surviving co-owner "had neither possession nor enjoyment of the bonds and *had no access to the safe deposit box in which the bonds were kept.*" (Emphasis added.)

The present controversy is factually distinguishable from our prior cases and is not controlled directly by those decisions. Unique to this case is the existence of the agency relationship between the surviving co-owner of the bonds and the surviving co-holder of the safe deposit box. It was averred by the surviving members of the family, and stipulated by the Commonwealth, that "Joseph could and would have secured the joint bonds from the joint safety deposit box of Mabel and himself on the request of Frances for delivery to and use by her." On appeal the Commonwealth has raised a number of contingencies which could have arisen to defeat the agency relationship and has even questioned whether the stated agency agreement ever existed at all. Those questions were proper matters for the Common Pleas Court. If the Commonwealth had challenged the existence, extent or binding nature of the agency agreement averred to exist between the co-owner of the bonds and the co-holder of the safe deposit box before the lower court, they would have presented an issue of

fact to be resolved by that court. However, having stipulated below that Joseph *could and would* secure the bonds on demand by Frances, the Commonwealth cannot now argue that the existence of the agency agreement is open to doubt.

Where a co-owner is able to prove access to his property through a qualified agent, the co-owner has a present, unrestricted and immediate right of possession sufficient to sustain the imposition of transfer inheritance tax under the formula outlined in Section 241 of the Inheritance and Estate Tax Act of 1961.

Decree affirmed. Costs on appellant.

Mr. Justice EAGEN dissents.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result for substantially the reasons set forth in my dissenting opinion in *Beggy Estate,* 446 Pa. 166, 171, 285 A. 2d 89, 91 (1971).