**Caruso Estate**

*August L. Sismondo,* for accountant.
*William A. Johnson, Special Attorney General,* for Commonwealth.

SIMMONS, *J.,* August 10, 1976—The undisputed facts in this case are as follows: that Eugene V. Caruso purchased entirely from his own funds a total of $39,267.13 in United States Savings Bonds, Series E, registered in the names of Eugene V. Caruso or Frances Caruso. These bonds were purchased through his employer, Macbeth-Evans Federal Credit Union and his subsequent employer, Corning Glass Company. The purchase of these bonds by Eugene V. Caruso began back on September 12, 1949, and continued up until February of 1966. The purchase price of the bonds was deducted from his wages received as an employe at Macbeth-Evans Company and subsequently, Corning Glass Company.

On August 15, 1967, a lease agreement for a safety deposit box was entered into between the Pittsburgh National Bank and Eugene V. Caruso and Mrs. Frances Caruso, his mother. The lease agreement purported to grant both Eugene V. Caruso and Francesca Caruso (also referred to as Frances Caruso) access to the box. Both lessees, Eugene Caruso and Francesca Caruso, acknowledged receipt of two keys to said box, said receipt being part of said lease agreement. However, it is uncontested that Francesca Caruso never in fact possessed either of said keys and that at all relevant times, said two keys were in the possession and control of Eugene V. Caruso only.

Shortly after August 15, 1967, all of the "E"

bonds heretofore mentioned were placed in said box.

As stated above, Eugene Caruso received two keys to the box, but the undisputed evidence is that neither of said keys was ever delivered to his mother, Mrs. Frances Caruso, also known as Francesca Caruso.

On April 22, 1973, Mrs. Francesca Caruso died. It follows, and it is undisputed that from August 15, 1967, up to and including the date of her death, Mrs. Francesca Caruso at no time had in her possession a key to said box and at no time did Mrs. Francesca Caruso enter into said bank to open said box or look into said box to view the contents thereof.

On May 11, 1973, the box was opened in the presence of a representative from the Pennsylvania Department of Revenue, Bureau of County Collections and subsequently the Department of Revenue, Bureau of County Collections, assessed an inheritance tax on one-half of the value of the savings bonds which were registered in the names of the decedent and her son, Eugene V. Caruso. The tax levied by the Pennsylvania Department of Revenue was in the sum of $1178.01 being at the rate of 6 percent on one-half of the value of the bonds.

Eugene V. Caruso promptly appealed from the tax assessment of the Commonwealth and a full evidentiary hearing was held in regard to the matter, and the above recited undisputed facts were adduced at said hearing. This court on May 28, 1976, sustained the appeal of Eugene V. Caruso and held that there was no tax due under section 241 of the Inheritance and Estate Tax Act of 1961, June 15, 1961, P.L. 373, 72 P.S. §2485-241. The

Commonwealth filed exceptions to the decision of this court. In due course, the respective counsel filed briefs and have argued this case before the court. The matter is now ripe for an opinion.

The court is still of the belief that an inheritance tax on the value of said "E" bonds is not due the Commonwealth. The relevant section of the Inheritance Tax Act reads as follows:

"When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons, so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant. This section shall not apply to property and interests in property passing by right of survivorship to the survivor of husband and wife. If the co-ownership was created in contemplation of death, within the meaning of section 222 of this act, the entire interest so transferred shall be subject to tax only under section 222, as though a part of the estate of the person who created the ownership. 1961, June 15, P. L. 373, Art. II, Sec. 241."

The question usually raised in cases arising under this section of the Act is whether the donor had irrevocably parted with exclusive possession and enjoyment of his property during his lifetime for as Mr. Chief Justice Maxey, in Myers Estate, 359 Pa. 577, 581, 60 A. 2d 50 (1948), noted:

"In determining whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately, or as not effective in possession or enjoyment until, at or after the death of the donor, the criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime."

In the Myers case, decedent had purchased bonds with his own funds, registered them in his name and that of one Hazel L. Wallick, and deposited them in a safety deposit box to which the said lady did not have access. Because decedent had bought the bonds with his own assets, the question arose whether the bonds had been part of decedent's estate or whether there had been a valid inter vivos gift of one-half the value of the bonds to said lady. Since it was held that decedent had complete control and complete dominion over the bonds during his lifetime to the exclusion of said lady, it was ruled that the full value of the bonds were taxable to the estate of decedent.

Merely registering bonds in the name of another does not pass ownership in U. S. Savings Bonds, if the purchaser retains exclusive possession of the same. See Myers Estate, supra. In the case at bar, it is clear that Eugene Caruso, not his mother, had purchased the bonds and the only question now to be answered is whether or not Eugene V. Caruso had retained complete control over these bonds at all relevant times up to and after the death of his mother.

The Commonwealth argues that the lease agreement in and of itself had given decedent full access to the subject bonds and that even though

the keys to the safety deposit box had not been given to her, the said Eugene V. Caruso had irrevocably parted with exclusive possession and enjoyment of the bonds to the extent of 50 percent ownership during the lifetime of his mother, the decedent. This argument of the Commonwealth has been rejected by the Supreme Court of Pennsylvania. Regardless of the provisions of the lease agreement, it has long been the law of Pennsylvania that at least one of the safety deposit box keys must be in fact delivered to the co-lessee of the box (in this case the decedent-mother) or there is no gift of the contents by the purchaser of the contents to his co-lessee even though the joint lease indicates that both of the co-lessees of the box have receipted for the keys, and even though "E" bonds that may be in such a box are in joint names of the co-lessees of the box. See Chadrow v. Kellman, 378 Pa. 237, 106 A. 2d 594 (1954), and Secary Estate, 407 Pa. 162, 180 A. 2d 572 (1962).

The facts are undisputed that the alleged donee, decedent Francesca Caruso, at no time had a key to this safety deposit box and that she at no time entered this box up to and including the date of her death. The mere fact that Eugene V. Caruso had purchased bonds with his own funds and registered them jointly in his name and that of his mother did not make of the bonds a valid inter vivos gift of a one-half interest of the same to his mother, since the said Eugene V. Caruso had retained complete control and had exercised complete dominion over the bonds at all times by withholding all keys to the box from the possession of his mother. See Myers Estate, 359 Pa. 577, 60 A. 2d 50 (1948), and Chadrow v. Kellman, supra.

If Eugene Caruso had died prior to his mother,

under the Myers case, cited supra, 100 percent of the value of the bonds would have been taxable to Eugene V. Caruso's estate. See also Beggy Estate, 446 Pa. 166, 285 A. 2d 89 (1971). There certainly should not be a different result in the amount of inheritance tax payable on "E" bonds placed in a safety deposit box by the purchaser, where the purchaser retains exclusive possession of the bonds placed in said box by retaining exclusive possession of the keys, and where the only factual difference is that in one case the purchaser dies first and in another instance, the non-purchasing co-registrant of the bonds dies first. If the Myers (359 Pa. 577) rationale is applied to a case where the purchaser retains exclusive possession of the bonds, the question as to the time of death of the persons who have their joint registered names on the bonds is irrelevant, since only the purchaser's estate would ever be liable for the payment of the inheritance tax to the extent of 100 percent of value. As a matter of public policy, the Myers' case rationale is good law, even though some of the traditional principles of personal property law may be somewhat strained in coming to the Myers' case conclusion.

The Supreme Court speaking through the eminent Chief Justice Maxey explains the public policy behind the result in the Myers case as follows:

"Both appellant's possession and enjoyment of the bonds in question were postponed until the donor's death since no previous access to them was made available to her. To permit a transfer inheritance tax exemption on all government bonds issued in the co-ownership form without examining the circumstances of each case, would encourage the practice of investing one's estate in

such bonds and registering them in joint names for the purpose of circumventing the payment of a legitimate exaction. The court below properly decreed that the full appraised value of the bonds which devolved to appellant are subject to a transfer inheritance tax."

The Commonwealth relies on the case of Monheim Estate, 451 Pa. 489, 304 A. 2d 115 (1973). This case is not controlling on this issue since it was stipulated in the Monheim case that the surviving party had the same access to the box containing the bonds as did decedent through a qualified agent who in turn had complete access to the safety deposit box. Under these circumstances, where the surviving co-owner of the safety deposit box had access to the box, the court found that there was an unrestricted and immediate right of possession to the subject bonds sufficient to sustain the imposition of the transfer inheritance tax.

However, the stipulated facts in the Monheim case are different from the facts in the case at bar inasmuch as the co-owner, Mrs. Francesca Caruso, did not have a present unrestricted right of possession of the contents of the safety deposit box because she did not have a key to the same. See Secary Estate, supra, and Chadrow v. Kellman, supra.

Compare the very recent case of In re Estate of Evans, 467 Pa. 336, 356 A. 2d 778 (1976), and-especially the dissenting opinion of Mr. Justice Roberts. (The majority opinion in the Evans case is not on point for the reason that although the claimant had a key to the safety deposit box, the box remained registered in decedent's name only and the claimant could not get into the box even with the key.) However, the dissenting opinion is

very instructive on the general law of Pennsylvania pertaining to this matter.

A well-reasoned case which is on all fours with the instant case is Oliver Estate, 21 Fiduc. Rep. 43 (1970), 71 Lack. Jur. 168. The facts in that case were as follows. Roscoe Oliver appealed from the assessment of an Inheritance Tax made by the Pennsylvania Department of Revenue on one-half of the value of U. S. Treasury "E" Bonds which were registered in his name and that of a brother, J. Clinton Oliver, the decedent, and which, on the date of his death, were in a safety deposit box rented in their joint names.

The evidence in the Oliver case clearly showed that:

(a) the bonds were the sole property of Roscoe Oliver;

(b) decedent never had access to the jointly registered bonds, and never had physical possession of them, because he never had a key to the box and at no time entered the box; and

(c) the joint registration was entirely for the benefit of the owner of the bonds, Roscoe Oliver, and they were purchased solely with his own funds.

In view of the foregoing, the Lackawanna County Common Pleas Court set aside the transfer inheritance tax assessment and sustained Roscoe Oliver's appeal.

The court in this case finds as a matter of law that the "E" bonds in question were at all times the sole property of Eugene V. Caruso, even though decedent's name had been placed on those bonds, inasmuch as the decedent-mother had no access to the safety deposit box because she did not have a

key. The son, as a consequence, retained at all relevant times, complete control and complete dominion over the bonds. Further, the court finds as a fact that the joint lease of the box and the joint registration of the bonds were merely for the benefit and convenience of the owner of the bonds, Eugene V. Caruso, inasmuch as they were purchased solely with his own funds and inasmuch as there is no indication that he intended to give them to his deceased mother at any relevant time.

Wherefore, the court will make the following order:

And now, August 10, 1976, the court finds that the bonds in question are and were at all relevant times the sole and exclusive property of Eugene V. Caruso; that decedent has never had access to the safety deposit box containing the jointly registered "E" bonds and consequently had no possession or any taxable property interest in them; that the joint registration of said bonds and the joint lease of the safety deposit box were solely for the convenience and benefit of the owner of the bonds, Eugene V. Caruso, and therefore it is held by this court that there is no transfer inheritance tax due the Commonwealth of Pennsylvania as a consequence of Eugene Caruso's ownership of said bonds.

The Commonwealth's exceptions to this court's order of May 28, 1976, are dismissed and the appeal of Eugene V. Caruso as to the Commonwealth's assessment of Pennsylvania Inheritance Tax on his "E" bonds is sustained.